ARTHUR J. MINOR *vs.* NARRAGANSETT MACHINE COMPANY.

MAY 21, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.    This is an action of the case in assumpsit to recover damages for the breach of a contract of employment.  A jury in the superior court returned a verdict for the plaintiff for $2276.43.  Defendant's motion for a new trial

was denied. The case is before us upon defendant's exceptions to that decision and to certain rulings during the trial.

The parties agree that there was a contract between them, but they disagree as to its terms. The plaintiff contends that he was employed for one year and that he was discharged during that period without just cause. The defendant, on the other hand, contends: first, that the plaintiff was employed for an indefinite period, which made his employment terminable at will; and, secondly, that even if he was employed for one year, he voluntarily resigned before the expiration of that time.

We will first summarize the evidence relating to the employment contract. In March 1942, the plaintiff, formerly an officer in the Engineers' Corps of the United States Army and a person of wide experience in industrial management, was in charge of the office of the War Production Board for Rhode Island and certain parts of Massachusetts. At that time the defendant corporation was in process of reorganizing its plant in Pawtucket, where it was engaged in the manufacture of general machine tools and machine tool products. The immediate purpose of this reorganization was to put itself in a position to handle large war contracts.

When the negotiations which culminated in the contract began, Norman T. Bolles was president and general manager of the defendant corporation and Frederick Stickney was its employment director. It is clear from the testimony of Bolles that Stickney, who did not testify, was the former's representative in the preliminary negotiations with the plaintiff. Stickney was the one who, having become acquainted with the plaintiff in the course of other dealings in behalf of the defendant with the W. P. B., suggested to Bolles that it might be possible to interest the plaintiff in the office of general manager for the defendant, a position which Bolles desired to fill with a competent man. Thereafter Stickney, with Bolles's knowledge and consent, opened negotiations with the plaintiff with this object in view.

The plaintiff testified that Stickney represented to him

that "the least time" for which the defendant "would engage a man" as general manager "was a year", at a salary of between $7500 to $10,000. The plaintiff replied "that no man would consider a job like that for less than a year's tenure." The plaintiff further testified that on another occasion he definitely told him that he "would not consider this job for less than a year."

Stickney then arranged a conference between the plaintiff and Bolles, in the course of which they discussed such problems as the renovating of machinery, the reorganization of personnel and other changes, so that the volume of defendant's business might reach $18,000,000 a year. The plaintiff testified that he then told Bolles that he would not consider accepting the position "for less than one year's contract. That was clearly understood"; that, in answer to his inquiry as to the amount of salary, Bolles told him that it would be at least "$9000 per year", and that he would also receive a bonus if any were available for distribution. According to the plaintiff, he told Bolles that he would consider the matter and inform him of his decision.

Bolles' testimony as to this meeting was that he suggested a salary of between $7500 and $8500 a year; that the plaintiff asked for a salary of $9000 a year and agreed to accept employment on that basis; and that the duration of the contract was not mentioned in this or any subsequent conversations on the matter. Bolles further testified that the plaintiff requested a letter from him confirming the arrangements that had been made so as to justify the plaintiff's resignation from W. P. B.

On April 4, 1942 Bolles sent plaintiff a lengthy letter in substance as follows: It begins by stating that the defendant was entrusted by both the war and navy departments with contracts for the manufacture of important and critical articles of ordnance "entailing a tremendous expansion program", and then proceeds to say that, after searching without success for competent persons to aid the defendant "in this emergency", it had turned to the plaintiff for assistance

and asked him to become its general manager. It then goes on to relate that the defendant had discussed the matter with responsible officials in Washington and various "outstanding Corporations" with whom it had contractual relations, and that the consensus of opinion was that the plaintiff could serve the interests of this country by doing his part in assisting the defendant in meeting the obligations imposed upon it in the production of tools, machines and articles of ordnance. The letter then says: "It gives me genuine pleasure to be able to offer this position to you at a minimum salary of $9,000 per annum", and closes by exhorting the plaintiff to make prompt arrangements so that his services might be available to the defendant with the minimum of delay.

It is unnecessary to refer to other conversations between the plaintiff and Bolles following this letter. The result of all negotiations was that the plaintiff resigned from W. P. B. as of April 11, 1942 and, on April 13, 1942, went to work for the defendant as its general manager. The defendant admits in its brief that while the plaintiff was in its employ it never claimed that his services were unsatisfactory.

We will now turn to the extensive testimony relating to the circumstances under which the plaintiff left defendant's employ. There was testimony, some of which was disputed, tending to show the following facts: On July 27, 1942, a Providence bank and the defendant entered into a guaranteed loan agreement in the sum of $1,900,000. The United States war department, acting through the Federal Reserve Bank as its fiscal agent, was the guarantor, while defendant also pledged as further security for the loan all its tangible and intangible assets. One of the requisites for such guaranty by the war department was that there should be no employment contract outstanding when the agreement was signed. Under such agreement the bank apparently could control the hiring of new personnel, but it had no power to compel the defendant to discharge any employee.

T. Dawson Brown, a vice-president of the bank, testified

that, previous to August 8, 1942, a Mr. Deshon, who is de-scribed as chief engineer of the Boston Ordnance District, hereinafter called the district, informed him by telephone that the district was dissatisfied with employment relations of the defendant, and that a Mr. Mack, the district's resident engineer at defendant's plant, would call upon him in reference to such matter. Brown also testified that on August 8 Mack met him and then informed him that the district insisted upon plaintiff's immediate resignation as general manager for the defendant. Neither Deshon nor Mack testified, and there is nothing in the testimony showing any reason for the alleged attitude of the district towards the plaintiff.

On August 10 Brown met Bolles at the plant and, apparently by prearrangement between them, Brown informed the plaintiff, who was called in conference, that the district demanded his immediate resignation. Brown testified that he did not tell the plaintiff what, if any, specific steps the district would take if he did not resign; that the purpose of his talk with the plaintiff was "to just indicate to him the handwriting on the wall"; and that neither he nor Bolles demanded the plaintiff's resignation. Bolles' testimony is substantially to the same effect.

The plaintiff testified that when Brown told him that the district demanded his immediate resignation, he called attention to his contract with the defendant and asked the reason for such demand. Brown remained silent, but Bolles spoke up and said that "He (Deshon) did not answer when I asked him"; whereupon the plaintiff commented: "No reason at all? That doesn't make sense." There is no other evidence that Bolles had ever spoken to Deshon concerning the matter.

The plaintiff further testified that Brown, in Bolles's presence, then informed plaintiff that if he did not resign by noon of that day, the defendant would be seriously embarrassed, as the district would cancel the financial agreement to which it was a party. Finding himself in this situation,

the plaintiff told Brown and Bolles that he "could not be a party to the interruption of any critical war work" and that, in view of his contract with the defendant, he "would have to resign under protest". The result of this conference was that the plaintiff immediately left the premises because, according to Brown, it was imperative that plaintiff be out of the plant when two government inspectors from Washington came there on that day.

Brown testified that he and Bolles both knew that the district would not cancel its agreement with the defendant if the plaintiff did not resign. When he was asked in cross-examination if Mack, the resident engineer of the district, had not conveyed to him the threat of a cancellation of that agreement unless the plaintiff resigned, his answer was: "If he had, I would have laughed at him because it was impossible."

On August 12 the plaintiff went to the plant to write a letter of resignation. Upon his arrival he was given such a letter by a secretary, with the information that Bolles had already prepared it for him. This letter consists of almost three large sheets of closely typewritten matter. Its general tenor is praise for the achievements of the defendant in reorganizing its plant and severe condemnation of the district for its continual interference with the defendant's program. Referring to the district, it says: "However, delays, frustrations and hindrances of scandalous and shocking nature have marked the efforts of the Boston Ordnance District to administer and supervise the Ordnance contracts which your Company had obtained through its unaided efforts. . . . There has been, moreover, consistent, persistent and flagrant interference with the management's productive efforts by the Boston Ordnance District." The letter ends as follows: "In protest I, therefore, have tendered my resignation to you, believing as I do that this action best serves the interest of your Company and of the country by focusing proper attention upon the attitude, application and designs of the Boston Ordnance District against your

Company." After reading this letter the plaintiff went to Bolles and told him that he would not sign any such letter, but that he would write one of his own.

Generally speaking, the plaintiff's letter of resignation contains a recital of what took place at the conference of August 10; it stresses the representations that were then made to him to the effect that the district would cancel its financial agreement with the defendant if he did not resign; and it concludes as follows: "To save the Narragansett Machine Company this serious embarrassment and the consequent interruption of critical war production, I tendered my verbal resignation, under protest, in view of the conditions under which I was employed by the Narragansett Machine Company, Mr. N. T. Bolles' letter of April 4th, 1942, confirmed by your Board."

Upon this state of facts the defendant moved for a directed verdict, on two grounds: first, that the contract, as reduced to writing in Bolles's letter of April 4, was in law a hiring at will and not for a year; and, secondly, that even if it were for that period, it had been terminated by plaintiff's voluntary resignation. The trial justice denied such motion as to both grounds for the reasons that, if the plaintiff's statement of the facts be accepted, a jury might reasonably find that the plaintiff was to be employed as defendant's general manager for one year, and that his resignation was not voluntary but was secured by the defendant through substantial misrepresentations.

Before us the defendant again argues this case as if Bolles's letter of April 4, 1942 contained the entire contract between these parties. On this assumption it contends that the fixing of plaintiff's salary at $9000 "per annum" in that letter sets the rate of payment for plaintiff's services but not the period of his employment, and that, therefore, the hiring was one at will.

As in any other contract the controlling factor in this case is the intention of the parties. If a contract is reduced to writing and the resulting instrument fairly sets out all the

terms of the agreement between the parties in unambiguous language, the interpretation of that instrument is for the court and not for the jury. But that is not the case here. The words "per annum", upon which the defendant so strongly relies for its conclusion, are not free from all doubt or ambiguity, nor have they acquired a technical meaning as words of art in the law of contracts. If doubt or ambiguity exist, the surrounding circumstances are important in ascertaining the intention of the parties, for in one instance the words "per annum" might merely mean the rate at which payment was to be made, while in another instance they might well mean both the rate of payment and the duration of the employment. What they do mean therefore was clearly an issue for the jury to determine.

The defendant urges that the case of *Booth* v. *National India Rubber Co.*, 19 R. I. 696, supports its contention that plaintiff's hiring was one at will. This is not so, for the *Booth* case is clearly distinguishable from the instant case. There the language in question was clearly different and the plaintiff himself testified that he understood the oral hiring to be for an indefinite period, while here the plaintiff positively told Bolles, who was admittedly acting with full authority from the defendant, that he would not even consider a contract of employment for less than a year.

In order to determine the true intention of the parties in this case, Bolles's letter to the plaintiff must be read in the light of the surrounding circumstances. When the entire course of dealing between the parties, up to and including the writing of that letter, is taken into consideration, it is quite evident that the letter is but a link in the chain of circumstances which, when considered as a whole, solves the question as to the duration of the contract. This presented a question of fact for the jury to determine. *Hatch* v. *Sallinger*, 47 R. I. 395. For other pertinent authorities see exhaustive annotation to *Putnam* v. *Producers' Live Stock Marketing Assoc.*, 256 Ky. 196 in 100 A. L. R., sub-

title VI, at page 841; also 1 Williston on Contracts, (rev. ed.) §39.

A similar situation exists in reference to what the defendant chooses to characterize as plaintiff's voluntary resignation. For the reasons stated, both grounds of defendant's motion to direct a verdict are without merit. Defendant's exception 22 is therefore overruled.

Under exception 2 the defendant contends that it was error to exclude a certain question in a proposed line of inquiry, as appears by an offer of proof, to the effect that the plaintiff did not claim that he had a contract for a year when, in July 1942, he learned that the defendant had entered into a financial agreement with the bank which required the defendant to cancel all employment contracts with its executives and he then knew that such a contract with one Sheeran had in fact been terminated in accordance with that agreement. The plaintiff was neither a party nor otherwise involved in defendant's financial agreement with the bank; nor was the action of the defendant in its relations with another executive any concern of his. In the circumstances of record such line of inquiry called for hearsay evidence as to matters which could not affect the plaintiff's legal rights respecting his contract with the defendant. This exception is overruled.

Defendant's exceptions 3 to 16 relate to rulings which allowed the plaintiff to relate the conversation that he had with Frederick Stickney, defendant's employment director, in reference to the length of employment and salary that the defendant had in mind if he, the plaintiff, were to become its general manager. The objection to the questions involved in these exceptions was that Stickney had no authority to make any such representations. Whether Stickney had actual or apparent authority in himself to speak as he did is of no consequence in the circumstances of this case, for the evidence is clear that his dealings with the plaintiff, which were merely preliminary and exploratory in character, were undertaken by him at the direction of Bolles, who

admittedly had authority to secure a general manager for the defendant, and who, with apparent knowledge of Stickney's prior conduct in the matter, actually consummated the contract in dispute here. These exceptions are overruled.

The determination of exceptions 23, 30 and 31 rests upon the same grounds. Under exception 23 the defendant contends that the trial justice erred in refusing to charge the jury, as requested, that the statement in Bolles's letter of April 4, 1942, to the effect that the defendant would employ the plaintiff as its general manager at a minimum salary of $9000 a year imported in law a hiring for an indefinite period, which might be terminated at any time by either party. This request to charge, while consistent with the theory upon which the defendant relied in resisting plaintiff's claim, is quite inconsistent with the view that we have hereinbefore expressed in discussing defendant's exception to the denial of its motion for a directed verdict, and therefore was properly denied.

The question presented by exceptions 30 and 31 is the converse of the one just considered. Under these exceptions the defendant contends that it was error to charge the jury that it was for them to determine whether the contract was for an indefinite period or for a year, and that in determining this question they could take into consideration all the surrounding circumstances in evidence. This instruction, in contradistinction to the defendant's request to charge, is in accordance with the view expressed by us in this opinion. Exceptions 23, 30 and 31 are therefore overruled.

Exception 32 is to the denial of defendant's motion for a new trial. Under this exception the defendant contends, first, that the question as to the duration of the contract should have been decided by the court and not by the jury, and further says that the trial justice nowhere in his rescript finds that the jury's answer to such question was the proper construction of the contract; and, secondly, that the

trial justice was "completely unwarranted" in finding that the plaintiff resigned because the defendant intended to terminate his employment.

The first contention is unsound in that, in substance, it seeks to have the trial justice review his alleged errors of law, which he cannot do on a motion for a new trial. In considering such a motion he is bound to follow the law as stated by him to the jury, for it is then the law of the case. *Union Fabrics Corp.* v. *Tillinghast-Stiles Co.,* 58 R. I. 190, 193. The trial justice followed this rule in the instant case and, upon a review of the evidence, found that the jury was "clearly warranted" in deciding that the contract was for a period of one year. Such language constitutes a clear expression by him that the verdict was supported by the weight of the evidence and that such verdict met with his approval. We find no reason to disagree with the trial justice on this point.

The second contention is also without merit. Defendant argues that there is no evidence to support a finding that the plaintiff was discharged and that such a finding is based "solely on suspicion and conjecture", as the defendant never requested him to resign nor did it give him any reason to believe that he was going to be discharged if he did not resign. Such argument follows the shadow and not the substance of the evidence on this point.

There is ample evidence, if believed, from which both the jury and the trial justice could reasonably find that the plaintiff's resignation *under protest* was qualified and expressly subject to the terms of his contract with the defendant; that he was induced to tender such resignation by substantial misrepresentations knowingly made to him by Brown, in Bolles's presence and with his consent, in the conference of August 10; and that such misrepresentations, which were tantamount to a demand that the plaintiff resign or be discharged, were made by Bolles, with Brown as the spokesman, to induce the plaintiff's resignation. We find no error in the denial of defendant's motion for a new trial and, therefore, exception 32 is overruled.

All other exceptions briefed by the defendant have been considered and found to be without merit. Exceptions not briefed or argued are deemed to be waived.

All of defendant's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the verdict.

*Sisson, Fletcher, Worrell & Hodge, Paul H. Hodge,* for plaintiff.

*Hinckley, Allen, Tillinghast & Wheeler, S. Everett Wilkins, Jr.,* for defendant.

