308 A.2d 788.

THE SCHOOL COMMITTEE OF THE CITY OF PROVIDENCE *vs.*
BOARD OF REGENTS FOR EDUCATION.

AUGUST 22. 1973.

PRESENT: Roberts, C. J., Paolino, Joslin and Doris, JJ.

JOSLIN, J. The Providence School Committee (the "committee") petitioned this court for a writ of certiorari to review the action of the Board of Regents for Education (the "board") in affirming a decision in which the Com-

missioner of Education (the "commissioner") sustained the appeals of 75[1] school administrators or supervisory personnel (the "administrators") of the Providence School Department (the "department") each of whom claimed that the committee had unlawfully breached its employment contract by illegally under-compensating him for the school year which began in September, 1971. We issued the writ, *Providence School Comm.* v. *Board of Regents*, 110 R. I. 940-41, 295 A.2d 435 (1972), and directed the parties to brief and argue, *inter alia*, whether a school committee is an "aggrieved person" within the contemplation of the provision regulating judicial review of contested cases arising under the Administrative Procedures Act [G. L. 1956 (1969 Reenactment) §42-35-15].[2]

The case has its origins in a 1959 school committee resolution, No. 150, which established various categories of administrative and supervisory personnel within the department and set their salaries at stated ratios of the school teachers' maximum basic salary.[3]

While resolution No. 150 is unclear on whether the teachers' salary schedule to which the stated ratio should be ap-

---

[1] While it is unclear from the record exactly how many administrators joined in the appeal, the number appears to be 75.

[2] That question has since been mooted by *Jacob* v. *Burke*. 110 R. I. 661, 296 A.2d 456 (1972) where we decided that the proper method for obtaining judicial review of a decision of the Board of Regents for Education is by application to this court for the prerogative writ of certiorari, rather than pursuant to G. L. 1956 (1969 Reenactment) §42-35-15. We discuss later in this opinion whether the committee had "standing" to petition for that writ.

[3] For example, it provided that a principal of an elementary school having less than 21 teacher units should receive a ratio of 1.3 of the teachers' maximum basic salary, that a principal of such a school having more than 20 and less than 41 teacher units should receive a ratio of 1.4 of that maximum, and that a principal of such a school having more than 40 and less than 61 units should receive a ratio of 1.5 of that maximum.

plied was that in effect in 1959 when the resolution was adopted or that in effect during each succeeding year, it is not disputed that at least until 1971 the practice consistently followed was to measure the compensation payable to administrative and supervisory personnel by that currently being paid to teachers. In that year, however, the committee enacted three pertinent resolutions. The first, No. 662, was adopted on April 15, 1971 and purported to freeze all salaries except those which had been established by existing contracts; the next, No. 68, was adopted on October 28, 1971 and it superceded resolution No. 662, repealed resolution No. 150, froze salaries of all department personnel for the fiscal year 1971-72 at their 1970-71 level, and specifically exempted from the freeze salaries set by collective bargaining agreements for department employees who were members of certified bargaining units. The third and final resolution, No. 55, was adopted on November 18, 1971 and it ratified a collective bargaining agreement with the teachers' union increasing the teachers' maximum basic salary and other benefits for the 1971-72 school year.

Following the adoption of those resolutions the committee faced the problem of whether the administrators' salaries had been frozen at its 1970-71 level, or whether, as in the past, they should be keyed to the teachers' increased salary scale for 1971-72. The committee elected to treat the salaries as having been frozen at the 1970-71 level and the administrators appealed to the commissioner. He ruled in their favor finding, in substance, that the salary freeze decreed in resolution Nos. 68 and 662 did not apply to them because they were employed under enforceable service contracts which entitled them to have their compensation for the school year 1971-72 measured by what was being paid teachers for that year. The committee thereupon appealed to the board, which affirmed

the commissioner's decision. This certiorari proceeding followed.

We consider initially whether the administrators were employed under enforceable service contracts. That question lies at the root of our problem inasmuch as what was due the administrators for their services, if contractually established, was specifically excluded from the committee's action freezing salaries at the 1970-71 level.

The answer to that question hinges on the terms of the several hirings.[4] They were in each instance oral and stated the services to be performed as well as the rate of compensation, but failed, at least as far as we have been advised, to specify the period of time during which they should be in force and effect. That omission is critical because of our settled rule that a promise to render personal services to another for an indefinite term is terminable at any time at the will of either party and therefore creates no executory obligations. *Lamoureux* v. *Burrillville Racing Ass'n,* 91 R. I. 94, 161 A.2d 213 (1960). We have so concluded even where the agreement of service provided that the employee would receive a fixed sum for a stated period of service. *Booth* v. *National India Rubber Co.,* 19 R. I. 696, 36 A. 714 (1897).[5]

---

[4]This question must be determined separately with respect to each of the administrators. The commissioner, the board and the parties have, however, particularized with respect to only four of the 75 administrators whom they apparently consider representative of all 75. This may be so, but nothing we have been told either by the commissioner or the board in their decisions, or by the parties in their briefs or arguments, so indicates.

[5]In the *Booth* case we held that the employment was at will even though the plaintiff at the time of the hiring had been told "[s]o long as you stay here and do what is right by the company, we will employ you and pay you by the year." *Booth* v. *National India Rubber Co..* 19 R. I. 696, 697, 36 A. 714, 715 (1897). *Contra,* 1 Williston, *Contracts* §39 at 121 (3d ed. 1957) which states:

292

The rule as stated, however, is not as rigid as at first it might seem, for the presumption that a hiring unaccompanied by an expression of time is at will can be rebutted by evidence that the parties intended that it would be a fixed period. Such an intention can be gleaned from the course of prior dealings between the parties or from any other surrounding facts or circumstances which might shed any light on the question. *Minor* v. *Narragansett Machine Co.,* 71 R. I. 108, 115-17, 42 A.2d 711, 714-15 (1945); *Hatch* v. *Sallinger,* 47 R. I. 395, 397-99, 133 A. 621, 622-23 (1926); see generally 1 Williston, *Contracts* §39 at 117 (3rd ed. 1957).[5]

Unfortunately in this case we are unable to determine what was contemplated in regard to the term of employment of each of the 75 administrators. Our inability is attributable to several causes. One is the board's failure —and the commissioner's also—to indicate upon what particular evidence, what surrounding circumstances, or what course of dealings it could have predicated a finding that the parties contemplated that the term of employment would be fixed. That determination was, as we have already indicated, a precedent to an ultimate holding that

---

"It is true that a hiring at so much a day does not specify the length of time that the service may endure, but it may fairly be presumed that the parties intended the employment to last for at least one day. The same principle applies if the payment is fixed by the week, month, or year. It is, of course, possible that this mode of expression was merely to fix the rate of compensation, but in the absence of evidence to the contrary, it seems a fair presumption that the parties intended the employment to last at least for one such period."

[6]Thus, for example, we said in the *Minor* case that a letter which confirmed a prior oral hiring at a specified minimum annual salary, but fixed no term of employment, should be construed in the light of the surrounding circumstances. Then, taking into consideration the course of the prior dealings between the parties, we concluded that there was a valid service contract. *Minor* v. *Narragansett Machine Co.,* 71 R. I. 108, 115-17, 42 A.2d 711, 714-15 (1945).

each of the administrators had a valid and enforceable service contract with the committee.

This infirmity in the board's decision would not in and of itself necessarily preclude an adequate and proper review were this a case where the record contained no evidentiary conflicts or were it one where the record disclosed a common evidentiary denominator as to what the parties to each of the 75 hirings intended with respect to the duration of his employment. But this is not such a case for the record here contains a testimonial conflict on the question of the term of the hiring[7] and in addition—at least insofar as we are advised by the board, the commissioner and the parties—is silent concerning the pertinent circumstances attendant upon the hiring of those administrators who, although parties, did not testify concerning the terms of their employment.[8]

In these circumstances and for the reasons elaborated upon at length in *Hooper* v. *Goldstein,* 104 R. I. 32, 241 A.2d 809 (1968), a proper review in this case is at this point in time impossible, and a remand to the board is required in order to afford it an additional opportunity to

---

[7]The administrators' Exhibit D announcing an administrative vacancy states that the length of the appointment is "one year * * * subject to renewal annually." On the other hand, one of the four administrators who testified said that he had been appointed on an interim basis and was prepared to step down at any time following the appointment of a replacement.

[8]The committee, in fact, goes further in its brief than we have and says that "* * * there is no evidence in the record from which the [b]oard could find that the term of employment for school employees is customarily one year." The administrators' only response to that assertion is to point to G. L. 1956 (1969 Reenactment) §16-13-2 which says that "[t]*eaching service* shall be on the basis of an annual contract." (emphasis added). That provision does not include administrative personnel. *Bryant* v. *Cunniff,* 111 R. I. 211, 301 A.2d 84 (1973); *Irish* v. *Collins,* 82 R. I. 348, 107 A.2d 455 (1954).

furnish an ample decisional demonstration of the factual foundations upon which it predicates its ultimate conclusion in each case.

There are in addition two procedural questions which, because they are likely to arise on remand, should now be decided. One is the committee's contention that the administrators were not "aggrieved." It may be summarily rejected since it is abundantly clear that an unpaid claim for services rendered pursuant to an alleged contract is a "classic example of a litigated right adversely adjudicated." *Pawtucket School Committee* v. *State Board of Education*, 103 R. I. 359, 366, 237 A.2d 713, 717 (1968).

The committee's reliance upon *McKeon* v. *Warwick School Committee*, 77 R. I. 421, 75 A.2d 313 (1950), for a contrary result is misplaced since in that case there was no presently existing dispute between the parties growing out of an infraction of law, but only an assumption by one party that the other might in the future violate the law. Thus, the assumption upon which the litigation there was premised was a violation that had not as yet taken place, whereas here the alleged wrong was existing, and it occurred when the administrators were paid during the 1971-72 school year something less than they would have received had their salaries been keyed to the teachers' maximum basic salary for that year.

The other procedural issue[9] brings into question whether the school committee was itself sufficiently "aggrieved" to invoke the judicial process by a petition for the pre-

---

[9] We brought this question into the case when the writ we issued directed the parties to brief and argue the question of a school committee's standing under the Administrative Procedures Act to challenge judicially an administrative decision reversing one of its own rulings. Although that specific question was since mooted, *infra* n. 2, the parties have nonetheless argued the question as if it concerned standing to apply for the prerogative writ of certiorari.

rogative writ of certiorari. This issue poses no difficulty since it is obvious that the committee in this case sought judicial review in an official capacity and as a representative of the people of Providence. It had a real interest in seeing that the department's administrative and supervisory personnel were paid neither less nor more than they were legally entitled to receive. Because the board's decision threatened that interest, the committee, on behalf of the people was aggrieved and thereby acquired standing to apply for the discretionary writ of certiorari. *Accord, Tedford* v. *Reynolds,* 87 R. I. 335, 343, 141 A.2d 264, 268 (1958); *Board of Police Commissioners* v. *Reynolds,* 86 R. I. 172, 178, 133 A.2d 737, 741 (1957); *Irish* v *Collins,* 82 R. I. 348, 357-58, 107 A.2d 455, 459-60 (1954).

For the reasons stated, the case is remanded to the Board of Regents for Education for the purpose of affording it an opportunity to reconsider its actions and to make further findings and orders in harmony with this opinion. Any party thereafter dissatisfied may, by motion filed in this court within 20 days following the board's action, bring the matter before us for further consideration. In that event it will be set down for argument upon the briefs now before us and upon such supplemental record and briefs as may be required. Jurisdiction for review of the board's supplementary decision is retained in this court.

Petition to reargue denied.

Kelleher, J. did not participate.

*Vincent J. Piccirilli,* for petitioner.

*Abedon, Michaelson, Stanzler & Biener; Julius C. Michaelson, Richard A. Skolnik,* for Providence School Administrators.