Anthony DelSIGNORE,

v.

PROVIDENCE JOURNAL COMPANY.

No. 95–692–Appeal.

Supreme Court of Rhode Island.

March 28, 1997.

Arlene M. Violet, Providence, for Plaintiff.

Patricia A. Sullivan, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

PER CURIAM.

The plaintiff, Anthony DelSignore, appeals from a summary judgment entered in favor of the defendant, Providence Journal Company. He claims that he was wrongfully discharged by the defendant in violation of the "just and sufficient cause" requirement of the union agreement between the defendant and certain of its other employees.[1] Although the plaintiff concedes that as a manager and nonunion member he was ineligible to be covered by this agreement, he claims that one or more of the defendant's agents orally represented to him that he had "whatever benefits and rights union employees had" vis-à-vis the defendant, thereby impliedly giving him the contractual right not to be discharged except for just and sufficient cause. He further claims that an implied contract arose by virtue of the defendant's "various

---

1. The plaintiff also alleged in his complaint "a breach of contract * * * to pay [him] $80,000 and [provide him with] other benefits," abuse of process, malicious prosecution, prosecution of a frivolous unemployment compensation appeal, negligent infliction of emotional distress, and intentional infliction of emotional distress. However, because he has not claimed error as to the entry of summary judgment on these claims, we will not review the propriety of this ruling on appeal. Sup.Ct. R. 16(a).

memoranda and by [the defendant's] policy, practice and procedure."

■ We directed both parties to appear before us to show cause why the issues raised by the appeal should not be summarily decided. After reviewing the Superior Court record, the parties' legal memoranda, and their oral arguments, we conclude that cause has not been shown and shall therefore proceed to decide this appeal without further briefing and argument.[2]

■ The defendant employed plaintiff as a district manager from 1973 until he was discharged on December 5, 1991 for his inability to explain to defendant's satisfaction why there was a $400 shortfall between his reported collections and the deposits of money he had collected from defendant's newspaper carriers. The plaintiff asserts that throughout his eighteen years working for defendant he was told by defendant's authorized agents (his immediate superiors as well as those "high up there" with defendant) that defendant would follow to a "T" the then-existing union contract in its employment relations with defendant, that he would be entitled to "all rights, benefits, and privileges" given to union members, and that the disciplinary and termination procedures afforded union members would also be applied to him.[3] The plaintiff further alleges that in his dealings with defendant, his employment rights and benefits did in fact track those of union members over the course of his tenure with defendant.[4]

■ Assuming without deciding that these alleged facts, if accepted by the factfinder as true and if unrebutted by other credible evidence, would entitle plaintiff to be discharged only for just and sufficient cause,[5] the union

2. We review the propriety of the granting of a summary-judgment motion on a de novo basis, applying the same traditional criteria as the lower court. Thus, "summary judgment is appropriate when the record, viewed in the light most favorable to the party opposing the motion, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Marr Scaffolding Co. v. Fairground Forms, Inc.*, 682 A.2d 455, 457 (R.I.1996).

3. At his deposition, plaintiff testified as follows:
"Counsel: And the thing that they told you that you're testifying—you're relying on, is that the disciplinary procedures set forth in the guild contract were applicable to you?
"Plaintiff: Right.
"Counsel: Anything else?
"Plaintiff: Everything else. Everything else. In other words, the whole nine yards, whatever was in there [that is, defendant's labor agreement with the union].
"Counsel: In the guild contract?
"Plaintiff: Yes.
"Counsel: Including the limits on your rights in the guild contract, is that your testimony?
"Plaintiff: Whatever was there, whatever they told us."

4. The plaintiff also submitted an affidavit of a former district manager of defendant. This affiant testified that defendant historically had no written termination policy and that as long as employees did their jobs defendant would not fire them. Finally, plaintiff testified at his deposition regarding defendant's Separation Assistance Plan and its provision allowing employees with seniority to remain employed in some capacity if they were not interested in resigning:

"Counsel: And when [the employer] told you seniority, what was your understanding of how that affected your ability to have some say in where you got reassigned, assuming you weren't interested in resigning?
"Plaintiff: It meant to me that I had job security.
"Counsel: Would you explain why that meant you had job security?
"Plaintiff: Well, in other words, the buyout affected me only that if I wanted to take the severance I could. And if I didn't want to take it, I didn't have to. I would have my job."

5. We note, however, that in Rhode Island the general rule is that employees like plaintiff who are hired for an indefinite period with no contractual right to continued employment are at-will employees subject to discharge at any time for any permissible reason or for no reason at all. *E.g., Volino v. General Dynamics*, 539 A.2d 531, 532 (R.I.1988); *see also Pacheo v. Raytheon Co.*, 623 A.2d 464, 465 (R.I.1993) ("[i]t is not the role of the courts to create rights for persons whom the Legislature has not chosen to protect"). *But see School Committee of Providence v. Board of Regents for Education*, 112 R.I. 288, 292, 308 A.2d 788, 790 (1973) ("[t]he rule as stated, however, is not as rigid as at first it might seem, for the presumption that a hiring unaccompanied by an expression of time is at will can be rebutted by evidence that the parties intended that it would be a fixed period").

agreement not only preserved defendant's right to terminate its union employees but it also contractually obliged those employees to pursue in a "timely fashion" a specified grievance-and-arbitration procedure for alleged violations of the agreement.

Specifically, the union agreement provided that "any disputes * * * concerning discharges * * * shall first be discussed by a committee" of not more than three employees. If the committee's resolution results in "no understanding or settlement," the dispute is then to be referred to a joint standing committee of two employees named by defendant and two named by the union, the majority decision of which group is final and binding. If no resolution is reached by the joint standing committee, the dispute may then be submitted by either party to arbitration, which is considered the decision of the joint standing committee and is otherwise final and binding.

In response to his discharge, plaintiff failed to make any attempt to invoke this grievance procedure or to seek arbitration of the alleged breaches by defendant of the terms of that agreement, for which plaintiff now seeks legal relief.[6] Thus, even assuming that the job-security provisions in the union agreement were applicable to plaintiff as a result of the oral statements allegedly made to him by defendant's agents, plaintiff still would not be entitled to maintain this action because the union contract limited his remedy for alleged violations thereof to certain procedures that he failed to pursue or to invoke in a timely fashion.

In sum, even if the alleged oral representations cited by plaintiff were capable of creating a triable issue of fact concerning whether he was entitled to the job benefits specified in the union contract (an issue we need not decide), he failed to invoke in a timely fashion the grievance and the disciplinary procedures (including arbitration) that were the sole means available to him under that agreement to contest any adverse job action.

■ With respect to the plaintiff's alternative, implied contract theory, he has not directed us to anything in the defendant's policies, practices, procedures, or employee memoranda that would give rise to a reasonable belief that he was anything other than an at-will employee. *See Roy v. Woonsocket Institution for Savings*, 525 A.2d 915, 918 (R.I.1987). Accordingly, the plaintiff's unilateral belief that he had job security is insufficient as a matter of law to create a triable issue of fact. *See Payne v. K–D Manufacturing Co.*, 520 A.2d 569, 573 (R.I.1987) (the plaintiff's "feelings, assumptions, or beliefs [regarding his employment status] do not form the requisite basis for the award given by the jury").

We have carefully considered these and each of the other arguments raised by the plaintiff, and we find them to be without merit. Consequently, we deny and dismiss the plaintiff's appeal and affirm the grant of summary judgment in the defendant's favor.

---

**6.** We find no support in the record for plaintiff's contention that, following his termination, defendant prevented him from attempting to invoke and pursue the same grievance-and-arbitration procedures available to union members. Moreover, had it done so, plaintiff's remedy would have been to seek enforcement of that aspect of the alleged agreement, not to file a damage action in court for defendant's breach of the "just and sufficient cause" provision of the union agreement. *See* G.L.1956 § 28–9–5 ("[a] party aggrieved by the failure, neglect, or refusal of another to perform under a contract * * * providing for arbitration, may petition the Superior Court * * * for an order directing that the arbitration proceed in the manner provided for in the contract"); *see also Solomon v. Progressive Casualty Insurance Co.*, 685 A.2d 1073, 1074 (R.I. 1996) (considering analogous section of The Arbitration Act, G.L.1956 § 10–3–4; finding that "only recourse" for alleged breach of a contract to arbitrate "would be to petition the Superior Court for an order to enforce the terms of the arbitration agreement").