[Civ. No. 23840. Second Dist., Div. Three. Feb. 17, 1960.]

H. JAMES GORMLY, JR., et al., Respondents, v. JOHN L. DICKINSON, Appellant.

Richmond & Smith for Appellant.

Hahn & Hahn and Loren H. Russell for Respondents.

FORD, J.—This is an appeal by defendant John L. Dickinson from a judgment in favor of the plaintiffs. The action arises out of a sale of shares of stock in a corporation known as Waterwear Corporation.

On February 14, 1958, pursuant to stipulation, the motion of the plaintiffs to amend their original complaint was granted. The first cause of action of the amended complaint was based upon a document of November 21, 1955, under which the defendant Dickinson was to purchase from plaintiff H. James Gormly the shares of corporate stock. That document is set forth hereafter in footnote 2. The third cause of action was based upon the allegation that at the time of the transaction on November 21, 1955, involving the sale of stock to Mr. Gormly, no permit with respect to such stock had been issued as required by the California Corporate Securities Law. On May 12, 1958, the court granted permission to the plaintiffs to file another amended complaint. Such second amended complaint was filed on May 19, 1958. The third cause of action contained an allegation that no permit, as required by law, had been issued at the time of the transaction on November 21, 1955, but the cause of action was also founded on allegations of express fraudulent misrepresentations.

The judgment in favor of plaintiffs was with respect to the third cause of action of their second amended complaint. The findings of fact of the trial court pertinent thereto were as follows: 1. That on November 21, 1955, and for several

months prior thereto, the defendant Dickinson participated in a scheme and plan to cause the sale to plaintiffs of corporate stock in a proposed corporation to be known as Waterwear Corporation. 2. That Dickinson personally solicited and procured the sale to plaintiffs of such stock in exchange for the payment by plaintiffs of $10,000 on November 21, 1955. 3. That on November 21, 1955, and at all times prior thereto, no permit to issue, sell, solicit, or offer the sale of such stock had been issued under the California Corporate Securities Act.[1] 4. That on and prior to November 21, 1955, Dickinson fraudulently represented to the plaintiffs that he and those persons connected with him in the said scheme had valid and legal authority and right to offer, solicit, procure and obtain the sale of said corporate stock to the plaintiffs in exchange for the payment of $10,000 by the plaintiffs to the proposed corporation. 6. That Dickinson fraudulently represented to the plaintiffs that in exchange for the payment of $10,000 they would receive good, legal and valid corporate stock. 7. That the representations so made were false and that Dickinson at the time of making them had no reasonable ground to believe that they were true, and that in making the representations Dickinson did not act upon information sufficient to justify a reasonable man in concluding that a permit was not required to offer, solicit, and sell the stock to the plaintiffs. 8. That, in furtherance of his plan and scheme Dickinson fraudulently represented and promised on and before November 21, 1955, that upon payment by plaintiffs of the $10,000 for the stock, the entire amount so paid would not be used, expended or appropriated in any way by Dickinson or by Waterwear Corporation or those persons associated with Dickinson until such time as plaintiffs received the corporate stock, but that that representation and promise was false and that Dickinson, at the time of making such representation and promise, had no reasonable ground to believe that said representation was true and had no intention of performing that promise. 9. That in furtherance of the plan and scheme, on and prior to November 21, 1955, Dickinson fraudulently promised and represented to the plaintiffs that he would purchase from them at par value any corporate stock in Waterwear Corporation which they held one year from that date, but that Dickinson had no intention that such promise would be performed.

[1]The correct name is now ''Corporate Securities Law.'' (Corp. Code, § 25000.)

10. That each of such representations and promises was material and was made by Dickinson with the intention and for the purpose of having the plaintiffs rely thereon and, in such reliance, pay $10,000 for the corporate stock. 11. That the plaintiffs did rely thereon and, in such reliance, did pay the sum of $10,000 in exchange for the stock in Waterwear Corporation. 12. That subsequent to March 22, 1956, the plaintiffs did receive from Dickinson a stock certificate dated March 22, 1956, issued by Waterwear Corporation, representing the shares of corporate stock for which the plaintiffs had paid $10,000 on November 21, 1955. 13. That the stock certificate and the corporate stock represented thereby was and is worthless and void, and that the plaintiffs have been damaged by Dickinson in the sum of $10,000, together with interest thereon from November 21, 1955.

██ "In passing on appellant's contention that the findings are lacking in evidentiary support, the following principles must be observed: 'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact. [Citations.] ██ When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. [Citations.]' (*Primm* v. *Primm,* 46 Cal.2d 690, 693-694 [299 P.2d 231].) ██ Thus we must 'view the evidence in the light most favorable to the respondent' (*Estate of Isenberg,* 63 Cal.App.2d 214, 216 [146 P.2d 424]), and bear in mind that it is the function of the trial court to pass on the credibility of the witnesses and determine the weight to which their testimony is entitled." (*Gardner* v. *Rubin,* 149 Cal.App.2d 368, 372 [308 P.2d 892].)

██ Applying these principles, the evidence will be examined to determine if there is support for the challenged findings as to misrepresentations which were fraudulent in nature. Mr. Gormly testified that after meeting the appellant, probably in the early summer of 1955, he had a number of conversations with him about the business. The appellant took him to Newport Beach to observe the business. Mrs. Gormly accompanied her husband. A tour was made of the plant. The appellant said that money was needed to expand the business and that it was desired to terminate the present

partnership and form a corporation. A second trip of inspection was made and Mr. Gormly took a physical inventory with Mr. Cox, one of the partners, in the presence of the appellant. The appellant said that he was working part time then but was going to quit his job and work full time with the company. Mr. Gormly further testified that, on the return trip, the appellant said that "if we would invest in the business, he would personally guarantee to repurchase any stock that we would buy from the business at the end of a year, if at that time we no longer thought that we would like to be in the program." The respondents agreed to invest in the business. As to the use to be made of any money which the respondents might invest, Mr. Gormly testified as follows: "Mr. Dickinson stated that they needed the money to be able to show that they had money in the bank behind them so that they could get this partner to agree to remove himself from the business and allow a new company to be formed. He also stated that the business was largely operated on credit, and that they wanted to have this money in the bank so they could show that they had backing, had money behind them so that they could carry on their program. . . . Prior to November 21st, I stated that if we were to invest in the business, that our money was not to be touched until we received our stock. . . . He [appellant] said, 'We won't touch it.' ".

Mr. Gormly testified that on November 21, 1955, a meeting was held at the home of Mr. Cox at which the appellant and the respondents were present. Mr. Gormly handed his check for $10,000 to the appellant. The appellant said that the respondents would be given their stock as soon as the corporation was formed. Nothing was said by either Mr. Cox or the appellant which indicated to Mr. Gormly that they did not have the authority and the right under the law to receive the money from Mr. Gormly in exchange for the stock. Mr. Gormly testified, "I wouldn't have handed my money over, if they had said anything like that." Mr. Gormly did not then have knowledge that such transaction was prohibited by the Corporate Securities Law. On that occasion, as Mr. Gormly was handing the check to the appellant, he said, "Now, before I give you this money, you understand that it is not to be used in any way until we receive our stock in the corporation," and the appellant replied that it would not be touched. If he had not given that answer, Mr. Gormly would not have paid the money over to him. Nor would he have done so if the appellant had not presented to him the document signed by

appellant which is set forth in the footnote.[2] The check was dated November 21, 1955, and was made payable to Waterwear Corporation. The appellant put the check in his pocket. The check was cashed on the next day. On several occasions thereafter, the appellant told Mr. Gormly that the money had not been touched. After the corporation was formed, the appellant took the office of treasurer. At his own insistence, Mr. Gormly was made a director and he attended two or three board meetings. Subsequently, the respondents received a stock certificate dated March 22, 1956.

Mr. Gormly further testified that in June or July, 1957, he went to the home of the appellant and asked him what he wanted to do in response to the notice to repurchase the stock which Mr. Gormly had sent him. The appellant replied that he did not recall any such agreement. Mr. Gormly then said, "Why, John, how can you say that? That is one of the main reasons why we agreed to invest in Waterwear, was because we felt there was no risk, that you were guaranteeing our investment." The appellant replied, "Well, that is ridiculous; why would I guarantee your investment?" The appellant asked to see the agreement but it was in the possession of respondents' attorney.

Mr. Gormly further testified that prior to November 21, 1955, the appellant told him that he was working full time with Waterwear.

It was stipulated that Waterwear Corporation was formed on December 5, 1955. The corporation received a permit to issue its stock on March 6, 1956.

Mrs. Gormly testified as to various conversations with the appellant. Her testimony was consistent with that of her husband.

William D. Sexton, assistant cashier of the California Bank, who held the same position with the Newport Harbor Bank before that bank merged with the California Bank, was called as a witness on behalf of appellants. He testified that on

---

[2] "November 21, 1955

AGREEMENT

Not less than one year from date, and upon thirty (30) days written notice, I promise to purchase from H. James Gormley any part of the capital stock of the Waterwear Corporation standing in his name that is not spoken for. The agreed price is par, and for cash, plus six (6) per cent interest: said agreement to terminate one (1) year and thirty (30) days from date.

JOHN L. DICKINSON
John L. Dickinson"

November 22, 1955, an account was opened in the name of Waterwear Corporation and designated "Waterwear Corporation Special Account." The deposit was in the sum of $10,000. The signature card listed the appellant as treasurer. The only activity in the account after the deposit was the withdrawal of $10,000 on March 8, 1956. But the bank records indicated that the deposit was held as collateral for a loan from the bank as of November 23, 1955. The proceeds of the loan went into the checking account of the Waterwear Company on November 25, 1955, but the witness testified that the loan was to the corporation. Immediately prior to the receipt of the benefit of that loan, the balance in that Waterwear Company account was $8.62. The account was closed on December 9, 1955, the balance then being $400.51 which was deposited to the general account of Waterwear Corporation. On the card for that account, which was established on December 8, 1955, the appellant was shown as treasurer. When the $10,000 was withdrawn from the Waterwear Corporation Special Account, it was used to repay the bank loan.

Mr. Gormly further testified that on one occasion prior to November 21, 1955, he had a discussion with the appellant as to what his duties were going to be in the business. The appellant said that he was going to supervise the spending of monies by the company, and that all disbursements would pass over his desk. He stated that he felt he would like to tell Mr. Gormly this because then Mr. Gormly would feel more comfortable about what was going to be done with any money that was invested in the business. Furthermore, prior to November 21, 1955, as already noted, the appellant told Mr. Gormly that he had begun working full time with Waterwear.

The appellant, John L. Dickinson, took the witness stand in his own behalf. His version of the meeting of November 21, 1955, was as follows: "Mr. Cox recited generally the nature of developments in his company up to that time, and pointed out the necessity of doing something with his partner as soon as possible before his partner would take steps to dissolve the partnership. Mr. Cox inquired of Mr. Gormly if he felt he could assist him in carrying on the plans for acquiring full control of the partnership. Agreement was met, and Mr. Gormly prepared a check in the amount that Mr. Cox designated as the amount sufficient to settle with his partner." The appellant stated that Mr. Gormly requested that the money be set aside in a special account but that he made no statement with regard to the request and did not recall whether

Mr. Cox did. He denied any knowledge of any loan against the special account in which the $10,000 was placed. He stated that he prepared the document relating to his repurchase of stock at the suggestion of Mr. Cox and Mr. Gormly. He further testified that the check for $10,000 was given by Mr. Gormly to Mr. Cox. He denied that he was connected in any way with the company or the corporation prior to December 1, 1955. He stated that he never represented to the respondents that he had the right to sell stock in Waterwear Corporation. He denied that he ever attempted to sell stock in that corporation to the respondents.

On cross-examination, the appellant answered, in response to a question as to his knowledge as to whether or not Waterwear Corporation had a permit to issue stock, that he "had no idea of the status." As to whether he concerned himself with the question of whether or not there was such a permit, he said, "It was business in the process that I knew nothing about." He testified that prior to the meeting of November 21, 1955, he had not discussed with anyone whether or not Waterwear Corporation "had the legal authority to accept this money in exchange for stock." He admitted that he signed agreements relating to repurchase of stock for two or three persons other than Mr. Gormly. The appellant testified that during the last week of November, 1955, and December, 1956 [sic] he did not concern himself with what happened to Mr. Gormly's money. On redirect examination, the appellant stated that at the meeting of November 21, 1955, there was discussion to the effect that if a permit was not granted, the money would be returned to Mr. Gormly by the Waterwear Company. He further said that there was no discussion that Mr. Gormly was buying stock and that "He was not at that time buying stock in any corporation" but "he was making an advance to Mr. Cox, to the company." He further said, "He [Gormly] eventually would receive the stock of the corporation, if and when it was going to be issued, if this could be arranged by Mr. Cox, through gaining control of the Waterwear Company. Then it would be available."

It is clear that, in determining the credibility of the witnesses, the trial judge believed the testimony of Mr. Gormly and rejected that of the appellant to the extent that it was inconsistent with the evidence produced by the respondents. This the trier of fact was free to do. (*Voss* v. *Friedgen*, 141 Cal.App.2d 135, 137 [296 P.2d 424]; *La Jolla Casa de Manana* v. *Hopkins*, 98 Cal.App.2d 339, 345-346 [219 P.2d 871].)

The acceptance of the money of respondents as payment for corporate stock to be issued, at a time when there was no permit from the Commissioner of Corporations for such a transaction, was a violation of the Corporate Securities Law (Corp. Code, § 25000 et seq.), regardless of whether such a permit had been granted at the time of the actual issuance of the stock. (*Stonehocker* v. *Cassano*, 154 Cal.App.2d 732, 735-736 [316 P.2d 717] ; *Ogier* v. *Pacific Oil & Gas Development Corp.*, 135 Cal.App.2d 776, 780 [288 P.2d 101] ; *Randall* v. *Beber*, 107 Cal.App.2d 692, 700 [237 P.2d 994] ; *Bourke* v. *Frisk*, 92 Cal.App.2d 23, 27 [206 P.2d 407] ; see *People* v. *Jaques*, 137 Cal.App. 2d 823, 831-832 [291 P.2d 124].)
Such a transaction may give rise to cause of action for damages for fraud as is succinctly stated in *Taormina* v. *Antelope Mining Corp.*, 110 Cal.App.2d 314, at pages 319-320 [242 P.2d 665] : ''Appellants, in attacking the findings, point out that no demand was made for the return of the money paid, no notice of rescission given, and no tender made of the promissory note received by plaintiffs. These were unnecessary. Plaintiffs' action sounds in tort, for fraud. While it has long been settled that the purchaser of securities issued in violation of the Corporate Securities Law may recover in an action for money had and received on the theory that the sale and the securities are void (*Pollak* v. *Staunton*, 210 Cal. 656, 662 [293 P. 26] ; *Smith* v. *Bach*, 183 Cal. 259 [191 P. 14]), it is also the law that a person who sells a security impliedly represents that a permit therefor has been secured when one is required by law for such a sale, and if this implied representation is false, then it is a negligent misrepresentation which is an actionable fraud (*Mary Pickford Co.* v. *Bayly Bros., Inc.*, 12 Cal.2d 501, 525 [86 P.2d 102] ) ; and where, as here, the action is for damages for fraud, recovery may be had against all persons participating in the fraud, whether they received a portion of the money paid or not (*Auslen* v. *Thompson*, 38 Cal.App.2d 204, 212, 213 [101 P.2d 136] ).''

In *Mary Pickford Co.* v. *Bayly Bros., Inc.*, 12 Cal.2d 501, the Supreme Court stated, at pages 525-526 [86 P.2d 102] : ''Upon a full consideration of the applicable principles of law, it is clear that a person who sells a security impliedly represents that a permit therefor has been secured when one is required by the Corporate Securities Act for such a sale. If this implied representation is false, then it is a negligent misrepresentation which is an actionable fraud, and the buyer's right of action does not accrue until he discovers

its falsity unless the seller acted upon information sufficient to justify a reasonable man in concluding that no permit was required. In that event there has been a breach of warranty, but no fraud, and the buyer's cause of action accrues at the date of the sale." (See also *Bartlett* v. *Suburban Estates, Inc.*, 12 Cal.2d 527, 530 [86 P.2d 117].)

In the present case, there is no evidence sufficient to sustain an inference that the appellant "acted upon information sufficient to justify a reasonable man in concluding that no permit was required." To the contrary, the appellant testified that prior to the meeting of November 21, 1955, he had not discussed with anyone whether or not Waterwear Corporation "had the legal authority to accept this money in exchange for stock."

Since the appellant was the person who consummated the fraud, he is liable for the full amount of the damages, regardless of whether he personally profited by the transaction. (*Ogier* v. *Pacific Oil & Gas Development Corp., supra*, 135 Cal.App.2d 776, 780; *Tevis* v. *Blanchard*, 122 Cal.App.2d 731, 738 [266 P.2d 85]; *Randall* v. *Beber, supra*, 107 Cal.App.2d 692, 701; see *Mary Pickford Co.* v. *Bayly Bros., Inc., supra*, 12 Cal.2d 501, 515; 23 Cal.Jur.2d, Fraud and Deceit, § 47.)

The appellant makes the contention that the respondents must be found to have been *in pari delicto*. But the evidence does not support such claim. Mr. Gormly testified that at the time of the transaction he did not have knowledge that such transaction was prohibited by the Corporate Securities Law. As stated in *Taormina* v. *Antelope Mining Corp., supra*, 110 Cal.App.2d 314, at pages 320-321: "With reference to the contention that the plaintiffs were *in pari delicto* with defendants and therefore may not recover, the rule in this regard is that in actions such as the one with which we are here concerned ordinarily the purchaser of securities will not be held to be *in pari delicto*, because the Corporate Securities Law was enacted primarily for the protection of the investing public. 'When the action is between the purchaser and the corporation, the law attaches such great importance to the policy underlying the Blue Sky Law that the purchaser must be equally culpable with the corporation before he will be held to be *in pari delicto*.' (*Miller* v. *California Roofing Co.*, 55 Cal.App.2d 136, 144 [130 P.2d 740], and cases cited.) Even had the plaintiffs known that the consent of the Commissioner of Corporations would

have to be secured before they could receive their stock, they could not be held to be equally culpable with the sellers . . ." (See also *Mary Pickford Co.* v. *Bayly Bros., Inc., supra,* 12 Cal.2d 501, 516; *Austin* v. *Hallmark Oil Co.,* 21 Cal.2d 718, 727 [134 P.2d 777]; *Willens* v. *Hagge,* 154 Cal.App.2d 242, 243 [316 P.2d 29]; *Sampson* v. *Sapoznik,* 124 Cal.App.2d 704, 708 [269 P.2d 205]; *Randall* v. *Beber, supra,* 107 Cal.App.2d 692, 701.)

Since the cause of action upon which the respondents recovered was one for damages for fraud, such cause of action is not deemed "to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud." (Code Civ. Proc., § 338.) The second amended complaint was filed on May 19, 1958, which was within three years of the transaction of November 21, 1955. The cause of action was not barred. (*Voss* v. *Friedgen, supra,* 141 Cal.App.2d 135, 142.)

Proof of one material fraudulent representation was sufficient to justify recovery by the respondents. (*Dillon* v. *Sumner,* 153 Cal.App.2d 639, 644 [315 P.2d 84].) Accordingly, it is not necessary to consider the sufficiency of the evidence to support the findings of the trial court that the appellant falsely represented and promised that the $10,000 would not be used in any way until the respondents had received the corporate stock and that the appellant would purchase from the respondents at par value any corporate stock in Waterwear Corporation which they held one year from November 21, 1955, when in fact the appellant had no intention that such promises would be performed. (*Sears* v. *Myerson,* 106 Cal.App. 220, 223 [289 P. 173].)

The implied representation made by the appellant to the respondents was material because, as shown by the testimony of Mr. Gormly, if it had not been made, the respondents would not have delivered the check for $10,000. (*Adkins* v. *Wyckoff,* 152 Cal.App.2d 684, 689 [313 P.2d 592].)

The appellant makes the contention that the respondents are not entitled to prevail in this action because they entered into the transaction in reliance upon their own investigation. But the evidence does not support his position. It is true that the respondents did make some inquiry as to the nature of the business and its assets. But their investment was not made solely in reliance on their own investigation.

"The mere circumstance that one makes an independent investigation or consults with others does not neces-

sarily show that he relied on his own judgment rather than upon the representations of the other party, nor does it give rise to a presumption of law to that effect." (*Sullivan* v. *Helbing,* 66 Cal.App. 478, 483 [226 P. 803].) As said in *Lobdell* v. *Miller,* 114 Cal.App.2d 328, at pages 338-339 [250 P.2d 357] : "Where one conducts an investigation, he may still be entitled to rely upon certain representations concerning conditions as to which the investigation does not extend. (*Fuhrman* v. *American National B. & L. Assn.,* 126 Cal.App. 202, 213 [14 P.2d 601].) The evidence does not here conclusively show that the plaintiffs *completely* relied on their own investigation. The questions of the weight of the evidence on the subject and the credibility of the witnesses were for the trial court to determine. (*Shearer* v. *Cooper,* 21 Cal.2d 695 [134 P.2d 764].)"

 The appellant raises some question as to the sufficiency of the evidence as to reliance by Mrs. Gormly, but that contention is set at rest by the reasoning found in *Hunter* v. *McKenzie,* 197 Cal. 176, at page 185 [239 P. 1090] : "Of course it is incumbent upon the party seeking to recover in an action for deceit, founded upon false representations, to show that he relied upon and was influenced by them. True, there is no direct evidence showing that Mrs. Hunter relied and acted upon the alleged and found false representations, still it was not essential to a cause of action in her behalf to produce direct evidence that she relied upon such false representations. The fact of reliance upon alleged false representations may be inferred from the circumstances attending the transaction which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than his direct testimony to the same effect." (See also *Thomas* v. *Hawkins,* 96 Cal.App.2d 377, 380 [215 P.2d 495].)

 The trial court properly awarded interest on $10,000, the amount of the judgment, at the rate of seven per cent per annum from November 21, 1955, the date upon which the respondents parted with their check. (*Nathanson* v. *Murphy,* 147 Cal.App.2d 462, 466 [305 P.2d 710] ; see *Mary Pickford Co.* v. *Bayly Bros., Inc., supra,* 12 Cal.2d 501, 526.)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.