236 A.2d 639.

EAST PROVIDENCE LOAN COMPANY *vs.* JIM TOM ERNEST *et ux.*

JANUARY 2, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is an action in deceit based upon the plaintiff's allegations that the defendants falsely represented their state of financial solvency. The superior court justice sitting without a jury gave final judgment to the plaintiff in the amount of $2,365.83. This case is before us on the defendants' appeal from the judgment.

In January 1965, defendants, husband and wife, contacted plaintiff for the purpose of inquiring as to the possibility of securing a loan to dispose of some unpaid household expenses. At this time defendants had a loan outstanding with plaintiff which they had obtained in the preceding July. This loan was a two-year obligation in the amount of $1,500 and the present balance on that loan was $1,257. On January 29, 1965, the parties came to an agreement on a loan for $2,500 to be repaid over three years. By the terms of their new contract, the parties agreed to cancel the prior outstanding loan and include the unpaid balance thereon as part of the principal of the new loan; thus, although their agreement called for a loan of $2,500, in fact defendants received only $1,243 in cash—the balance of which represented the cancellation of the sum unsatisfied and outstanding on the earlier transaction. As a pre-condition to their latest loan, defendants were asked to fill out a form entitled "Financial Statement," on which they were instructed to list

all their "debts and liabilities of and other claims" against them individually or jointly; the ostensible purposes of this request, at least insofar as they were inscribed on the form, were the "showing [of] his, her or their ability to repay" and the "inducing [of] East Providence Loan Company to make said loan * * *." The defendants completed the form according to the instructions and after enumerating certain outstanding obligations, inserted the following handwritten statement on the form—"We have no other debts."

Several months later when it became apparent that they would be unable to extricate themselves from their financial morass, each defendant voluntarily filed a petition in the federal court on October 14, 1965, asking to be adjudged a bankrupt—which they were that same day. On November 15, 1965, plaintiff commenced the instant suit wherein it alleged that defendants had fraudulently represented their solvency on the Financial Statement form which they had signed in applying for the January 1965 loan. In its declaration plaintiff contended that an examination of the liabilities listed in defendants' petitions for bankruptcy clearly indicated that they owed many business and personal obligations which were deceitfully omitted on the financial statement given to it in January 1965; that it was misled and relied on that financial statement; and that it suffered financial loss as a result of its reliance. The trial justice found for plaintiff and this is the appeal from that judgment.

In their brief, defendants concede that the financial statement which they completed in applying for the January 1965 loan contained a false representation, the falsity of which was known by them, and that plaintiff suffered a financial loss. The defendants argue, however, that the false representation was not made with the intent to deceive, nor was it made for the purpose of inducing plaintiff to act

thereon, nor was it shown at the trial that plaintiff in fact relied on the falsely executed financial statement.

In addition, defendants take issue with the finding of the trial justice as to the measure of damages. The record shows that the trial justice entered a judgment for plaintiff in the amount of $2,365.83. This figure represents the current balance owed on the 1965 loan, which was $2,231.92, plus interest due from the date of the writ which was $133.92. The defendants contend that if it be found plaintiff relied to its detriment, its misplaced reliance could only have caused it damages to the extent of the cash actually disbursed by it and not by the face amount of the 1965 loan. Thus, following their argument, since they received only $1,243 in cash, the additional $1,257 which comprises the balance of the earlier loan should not be considered part of the damages sustained in this case. If the judgment for the full balance owed on the 1965 loan is permitted to stand, defendants declare that plaintiff acquires a windfall of $1,257.

In view of defendants' concessions that the financial statement contained a false representation of which they were cognizant, we find no merit whatever in their argument that they did not intentionally deceive plaintiff. The law has always presumed that people intend the natural and foreseeable consequences of their conduct. Likewise, defendants' contention that the financial statement was not submitted for the purpose of inducing plaintiff to give them a loan is contradicted by the realities of life surrounding contemporary loan transactions. Accordingly, therefore, neither argument warrants further discussion by us.

Essentially there are two issues to be decided in this appeal. The first is whether there is on the record sufficient evidence to support the finding of the trial justice that plaintiff did in fact rely on defendants' false financial state-

ment. The second is whether or not the trial justice erred in his computation of damages.

### First Issue

We have held in earlier cases that an action will lie for fraud and deceit against persons who fraudulently misrepresent their solvency or pecuniary responsibility provided it can be shown that the misrepresentation took the form of an expression of fact and not the offering of an opinion or estimate. *Campanelli* v. *Vescera,* 75 R. I. 71, 63 A.2d 722; *Cheetham* v. *Ferreira,* 73 R. I. 425, 56 A.2d 861; *Phillips* v. *Hebden,* 28 R. I. 1, 65 A. 266. It is also fundamental to actions predicated on the theory of deceit that a plaintiff must present evidence which shows he was induced to act because of his reliance upon the alleged false representation. *DiChiaro* v. *Spirito,* 89 R. I. 50, 150 A.2d 637; *Champlin* v. *Tanger,* 72 R. I. 284, 50 A.2d 440; 37 C.J.S., Fraud, §29, p. 269; 23 Am. Jur., Fraud & Deceit, §141, p. 939.

The defendants in this case assert that there was no evidence admitted at the trial on the issue of plaintiff's reliance. We disagree. Although there may not have been any direct evidence before the trial justice on the issue of reliance, we do not feel such is a requirement in actions for deceit. *Gormly* v. *Dickinson,* 178 Cal. App.2d 92, 2 Cal. Rptr. 650. While it is true that reliance is an essential element which must be shown for one to successfully maintain an action for deceit, the law does not demand that direct evidence be admitted on this issue if the necessary reliance can be inferred from the circumstances attending the transaction in question. *Thomas* v. *Hawkins,* 96 Cal. App.2d 377, 215 P.2d 495; *Mathewson* v. *Naylor,* 18 Cal. App.2d 741, 64 P.2d 979; *Sriver* v. *Maley,* 128 Ind. App. 619, 151 N.E.2d 518; 37 C.J.S., Fraud, §120, p. 445.

In the instant case the financial statement was admitted into evidence and there was testimony which indicated that

its completion by defendants was a condition precedent to obtaining the loan. It is fair to infer that under the facts before us, plaintiff would not have loaned money to defendants without their complying with plaintiff's request to set forth in writing their current financial status. On the financial statement itself, there appears language which stated that the information submitted on this form would serve as an inducement to make a loan. We also think that one who receives a statement which affirmatively states facts pertaining to the current credit standing and financial equity of a potential borrower is entitled to rely on the veracity of such representations without making a detailed investigation into the private affairs of the loan applicant. *International Shoe Co.* v. *Berick,* 55 R. I. 333, 181 A. 297. If there were no right to rely, an enormous investigatory burden would be placed on lenders and the flow of credit which plays such a vital part in our modern-day economy would be severely impeded.

We are satisfied, therefore, from our review of the record, that plaintiff's reliance could be fairly inferred from the evidence by the trial justice.

## Second Issue

The defendants argue that the measure of damages as found by the trial justice was erroneous because it included the full balance owed on the January 1965 loan instead of only that amount of cash which actually passed hands as a result of the fraudulent misrepresentation. The trial justice in computing damages ruled that although $1,243 in cash was given to defendants in January 1965, it was agreed between the parties that the prior loan would be discharged and its outstanding balance would be incorporated as part of the principal of the loan now before us. Accordingly, the court found that the earlier loan was cancelled and a new loan for $2,500 was substituted. The trial justice awarded damages on the one loan for $2,500. The plaintiff argues

in its brief that the January 1965 note operated as a novation which legally cancelled the earlier loan obligation.

We concur in the trial justice's ruling. While there may be some question as to whether it was a "novation" or a "substituted contract,"[1] the evidence appearing in the instant record plainly shows that the new loan made in January 1965 operated as a total discharge of the earlier outstanding loan and that all future rights, obligations and liabilities would emanate from the January 1965 loan agreement. Thus, under the instant facts, the loss suffered by the plaintiff as a result of the defendants' mendacious financial statement was the full balance on the only loan contract in which either party had any rights. *Phillips* v. *Hebden, supra.* In our opinion the trial justice's computation of damages was correct.

The defendants' appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Marvin A. Brill,* for plaintiff.

*Anthony R. Berretto,* for defendants.

---

[1]See *Mello* v. *Coy Real Estate Co.,* 103 R. I. 74, 79-80, 234 A.2d 667, 671, n.1, for the distinctions commonly drawn between a "novation" and a "substituted contract." See also 6 Corbin, Contracts, §1297, p. 213.