Chester J. DUDZIK

v.

LEESONA CORPORATION.

No. 81–450–Appeal.

Supreme Court of Rhode Island.

March 30, 1984.

John Earle, David F. Sweeney, Breslin & Sweeney, Warwick, for plaintiff.

John H. Blish, Edwards & Angell, Providence, for defendant.

## OPINION

SHEA, Justice.

This is an action for a declaratory judgment commenced in Superior Court by Chester J. Dudzik against his former employer, Leesona Corporation. Dudzik

sought a declaration that Leesona had breached the terms of a temporary-assignment agreement and also a declaration of the rights and relations of the parties flowing from that breach. Leesona filed a counterclaim for breach of the post-termination provisions of the agreement. The trial justice entered a judgment rejecting all of Dudzik's claims, except one increasing his severance payment, and declaring the rights and relations of the parties under the agreement. Both parties have appealed. We affirm.

I

Dudzik, who holds a doctorate in mechanical engineering with an emphasis on machine design, was employed by Leesona in 1954. He received promotions within the engineering department, and by 1969 he was a project engineer in the areas of textile machinery and yarn design and development. He also published articles in trade magazines, lectured around the world, and regularly applied for and was issued patents for Leesona.

In 1969 Leesona was engaged in extensive patent and antitrust litigation in the courts of the United States involving its stretch-yarn patents. Leesona's vice president in charge of research and development asked Dudzik to undertake a temporary assignment to assist Leesona's counsel, on a full-time basis, in the stretch-yarn litigation. He refused the assignment at first, giving as his reason that when he had returned from earlier temporary litigation assignments, he had not been given the responsibility to which he believed himself to be entitled. Before accepting, he wanted an agreement with Leesona which would provide that upon termination of the temporary assignment he would be offered either a position within the engineering department commensurate with what he would have had had he remained or adequate severance pay. The parties reached an agreement that was subsequently embodied in a signed one-page writing dated September 21, 1970.

According to the September 21 document, Dudzik undertook the temporary assignment in order to assist Leesona's legal counsel in developing the company's position in the stretch-yarn litigation then pending in various federal district courts. Dudzik's initial compensation was fixed at a base salary of $25,000 per year. The concerns that initially led Dudzik to refuse the temporary assignment were addressed in the agreement that provided, in pertinent part, as follows:

"(3) At the termination of this temporary assignment, you will be offered a position in the Research Division. Should the position offered within the research division not be acceptable to you, you will be paid promptly a two-year severance payment of $50,000, or an amount equal to the total of your last two years entire compensation, whichever is greater."

The writing contained a declaration that it was the entire agreement between the parties. It did not fix any specific term or duration for Dudzik's temporary assignment.

Dudzik expected a 10 percent increase in his base salary in January 1971. When the raise did not materialize, he refused to testify in certain Canadian litigation because to do so was not specifically provided for in the September 21 agreement. Thereafter, the parties executed a memorandum dated June 7, 1971, which amplified the September 21 agreement. The June 7 agreement granted Dudzik an annual 10 percent salary increase. It also granted him the same consideration as any other management employee in terms of eligibility for participation in bonus and stock-option programs. The agreement also provided, in pertinent part, as follows:

"4. Your special assignment to assist legal counsel on matters relating to pending stretch yarn litigation is limited to the termination of the Kayser-Roth litigation and other related or associated stretch yarn litigation."

Leesona terminated Dudzik's temporary assignment in December 1977. After being

reminded by Dudzik of their written agreement, Leesona offered him a position as manager, Special Projects, Textile Development, at a salary of $30,000.[1] He rejected the position and elected to receive his severance payment under the terms of the September 21 agreement.

Leesona computed Dudzik's severance payment by adding his 1976 and 1977 compensation ($45,736 and $52,515 respectively) in the form of salary and bonuses together with twice the value of his accrued vacation pay for 1977 ($4,059). The company issued Dudzik a severance check for $102,310, which he accepted and cashed, retaining the proceeds.

Dudzik attempted to exercise his Leesona stock option with the intent to increase his severance pay. Leesona officials convinced him, however, that the income from his stock option would not be compensation within the severance agreement and therefore would not increase his severance payment. Dudzik relied on this statement and did not exercise his stock option until 1978, when he was no longer employed by Leesona. Dudzik subsequently commenced this action for declaratory judgment.

## II

The principal issue in this case is whether the temporary-assignment agreement was a contract for a fixed term, as Dudzik maintains, or a contract at will, as Leesona asserts. The dispute centers on the language contained in paragraph 4 of the agreement of June 7, 1971. It states, in part, as follows:

"4. Your special assignment to assist legal counsel on matters relating to pending stretch yarn litigation is *limited to* the termination of the Kayser-Roth litigation and other related or associated stretch yarn litigation." (Emphasis added.)

Each party reads "limited to" differently. Dudzik's interpretation would require Leesona to retain him in his temporary assignment until the termination of the Kayser-Roth and other related litigation.[2] Leesona contends that the language established an outside limitation on the duration of the assignment but that it did not preclude an earlier termination.

■ Clear and unambiguous language set out in a contract is controlling in regard to the intent of the parties to such contract and governs the legal consequences of its provisions. *Chapman v. Vendresca*, R.I., 426 A.2d 262, 264 (1981); *Fireman's Fund Insurance Co. v. E.W. Burman, Inc.*, 120 R.I. 841, 847, 391 A.2d 99, 102 (1978). Such language is assigned its ordinary, dictionary meaning. *See Westinghouse Broadcasting Co. v. Dial Media, Inc.*, R.I., 410 A.2d 986, 991 (1980); *Armfield v. Frank N. McClure, Inc.*, 77 R.I. 390, 394, 75 A.2d 196, 198 (1950).

■ The phrase "limited to," as employed in the temporary-assignment agreement, is clear and unambiguous. The word "limited" is defined as meaning "[c]onfined or restricted with certain limits." American Heritage Dictionary 732 (2d C.Ed.1982). Black's Law Dictionary 836 (5th ed. 1979) defines "limited" to mean "[r]estricted; bounded; prescribed. Confined within positive bounds; restricted in duration, extent, or scope."

■ We conclude that the phrase "limited to" in the temporary-assignment agreement means that Dudzik's temporary assignment to assist Leesona's counsel was not to continue longer than the termination of the specific litigation. The words were not intended to fix a specific term for the temporary assignment, but rather to set an outer limit or boundary on the duration of the assignment. This created a contract for an indefinite duration that in no event

---

1. Dudzik's 1977 salary under the temporary-assignment agreement had risen to $52,515, including bonuses.

2. The parties stipulated that on the date of Leesona's termination of Dudzik's temporary assignment, and at the time of trial, there was still pending other related or associated stretch-yarn litigation.

would extend beyond the termination of the litigation. "[I]n the absence of fraud or mistake, parol evidence is not admissible for the purpose of varying, altering, or contradicting a written agreement." *American Underwriting Corp. v. Rhode Island Hospital Trust Co.,* 111 P.I. 415, 421, 303 A.2d 121, 124 (1973); *see also Supreme Woodworking Co. v. Zuckerberg,* 82 R.I. 247, 252, 107 A.2d 287, 290 (1954).

■ "[A] promise to render personal services to another for an indefinite term is terminable at any time at the will of either party and therefore creates no executory obligations." *School Committee of Providence v. Board of Regents for Education,* 112 R.I. 288, 291, 308 A.2d 788, 790 (1973); *see also Lamoureux v. Burrillville Racing Association,* 91 R.I. 94, 99, 161 A.2d 213, 216 (1960); *Booth v. National India Rubber Co.,* 19 R.I. 696, 697, 36 A. 714, 715 (1897). This rule applies "even where the agreement of service provided that the employee would receive a fixed sum for a stated period of service." *School Committee of Providence,* 112 R.I. at 291, 308 A.2d at 790. .

The trial justice below was correct when he declared that the language of paragraph 4 established a period beyond which the assignment would not extend, not an assignment for a fixed term. The temporary-assignment agreement created a contract at will. Leesona therefore had the right to terminate the temporary assignment in December 1977.

■ We also hold that the trial justice was correct in determining that Leesona had fulfilled its obligations under the temporary-assignment agreement. Leesona had made a good-faith attempt to comply with its obligations under the September 21, 1970 writing. The evidence established that the position offered—manager, Special Projects, Textile Development—would have involved heat applications to yarn, an area in which the background and expertise of Dudzik was material and relevant. It was suggested to Leesona officials by his would-be immediate supervisor as a way of solving some longstanding problems in develop-

ment. The $30,000 salary was in the middle of the $23,930 to $35,890 pay range for that position.

Our resolution of the issue involving the term of the contract makes it unnecessary for us to consider Leesona's defenses of election, waiver, and estoppel. Finally, there is no merit to Dudzik's claim of an implied covenant of good faith.

### III

In its cross-appeal, Leesona asserts that the trial justice erred in declaring that the severance payment due to Dudzik under the temporary assignment should have been increased by the sum of $5,625. This amount reflected income that would have been attributable to Dudzik had he exercised his stock option in 1977.

Dudzik exercised his stock option in 1977, believing it would increase his "entire compensation" for that year and hence the severance payment due him under the temporary-assignment agreement. To this end, he signed stock option forms. Leesona officials convinced him, however, that his exercise of the stock option in 1977 would not increase the amount of severance Leesona was contractually obligated to pay him. In reliance upon this advice, Dudzik cancelled his exercise of the option.

■ This court has held that an innocent misrepresentation of a material fact may be actionable if it induces reliance. *Halpert v. Rosenthal,* 107 R.I. 406, 415, 267 A.2d 730, 735 (1970). To recover, however, the proponent must prove his case by a fair preponderance of the evidence. *Silvia v. Wicks,* 116 R.I. 545, 547, 359 A.2d 33, 34 (1976); *Halpert v. Rosenthal,* 107 R.I. at 418–19, 267 A.2d at 736–37. A misrepresentation occurs when there is a " 'manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts.' " *Halpert v. Rosenthal,* 107 R.I. at 413, 267 A.2d at 734. A misrepresentation becomes material when it is likely to affect the conduct of a reasona-

ble person with reference to a transaction with another person. *Id.*

■ The evidence established that Leesona erroneously informed Dudzik that the exercise of the stock option in 1977 was not "compensation" within the meaning of the temporary-assignment agreement for purposes of determining the amount of the severance payment. The trial justice found that if Dudzik had exercised his stock option, it would have been a reportable event for income tax purposes and therefore "compensation." Dudzik relied upon this misrepresentation and cancelled the exercise of his stock option.

■ "[W]here one induces another to enter into a contract by means of a material misrepresentation, the latter may rescind the contract." *Id.* It follows logically from this rule that, when one induces another by means of a material misrepresentation to forgo a benefit to which he is legally enti-

tled under a contract, the latter may recover that which he has forgone. The misrepresenter's good faith is immaterial. *Id.* at 415, 267 A.2d at 735. The trial justice was correct when he declared that Dudzik's severance payment should be increased by the sum of $5,625 to reflect income that would have been attributable to the exercise in 1977 of the option to purchase 500 shares of Leesona stock.

The plaintiff's appeal is denied and dismissed. The defendant's cross-appeal is denied and dismissed. The judgment below is affirmed, and the papers of the case are remanded to the Superior Court.