**ST. PAUL FIRE & MARINE INSURANCE COMPANY**

v.

**RUSSO BROTHERS, INC., et al.**

No. 93–135–Appeal.

Supreme Court of Rhode Island.

May 23, 1994.

George T. Gilson, William M. Heffernan, Heffernan & Gilson, Providence, for plaintiff.

Anthony F. Muri, Leo J. Wold, Goldenberg & Muri, Providence, for defendant.

## OPINION

SHEA, Justice.

The defendants, Rose and Louis Russo, appeal from a Superior Court order granting the plaintiff's motion for summary judgment. The plaintiff, St. Paul Fire and Marine Insurance Company (St. Paul), sued the defendants to recover funds St. Paul paid to the State of Rhode Island under a Cigarette and Tobacco Tax Bond that St. Paul issued on behalf of the defendant Russo Brothers, Inc. The Superior Court entered judgment against defendants Rose and Louis Russo (the Russos) in the amount of $114,019.60 together with attorneys' fees and costs of $21,755.45 plus interest. The summary judgment was based upon a general agreement of indemnity that the Russos executed in consideration for the bond. We affirm.

This case concerns the application of the parol evidence rule to the indemnity agreement executed by defendants. There is little dispute regarding the facts in this case. The defendant Russo Brothers, Inc., (Russo Bros.), was incorporated in 1953 to engage in wholesale distribution of tobacco products, candy, and other merchandise. The Russos were principals of the corporation until it ceased operations in 1985. The defendants' insurance agent, David Chase (Chase), who was an authorized agent of St. Paul, arranged for St. Paul to provide defendants with the statutorily required cigarette-tax bond in 1975.[1]

The State of Rhode Island imposes taxes on cigarettes held for sale by means of tax stamps. General Laws 1956 (1988 Reenactment) § 44–20–12, as amended by P.L.1993, ch. 138, art. 64, § 1. Distributors may acquire the stamps prior to the sale of cigarettes and then pay for them within thirty days provided the distributors have filed a bond covering the value of the stamps with the tax administrator. Sections 44–20–19, as amended by P.L.1993, ch. 138, art. 85, § 2 and 44–20–20. In 1975 St. Paul provided a bond in the amount of $100,000 as surety for defendants' purchase of tax stamps. St. Paul would annually review the financial statements of Russo Bros., prior to extending the bond for another year. At the time for annual renewal in June 1982, insurance agent Chase informed defendants that due to their company's poor financial performance in 1981, St. Paul would not renew the bond unless defendants executed an indemnity agreement. The defendants complied, and St. Paul extended the bond for another year. The defendants contend that they never read the agreement prior to signing it.

St. Paul extended the bond for the next two years, 1983 and 1984. By 1983 the bond amount had increased to $155,000. St. Paul then canceled the bond in 1985. The defendants' 1984 financial statements had indicated the company had operated at a net loss for the year. The defendants did not attempt to acquire a tax bond from another insurance company and failed to meet their tax obligations during 1985. The state then sought the tax payments from St. Paul, who was still liable under the bond terms for one year and a day after its cancellation. St. Paul paid the tax administrator $114,019.60 and subsequently brought suit against defendants to recover the money pursuant to the indemnity agreement. After St. Paul successfully moved for summary judgment, defendants appealed to this court.

---

1. The defendants brought a third-party action against Chase under a theory of common-law indemnity. Chase successfully moved for summary judgment from which defendants subsequently withdrew their appeal.

The defendants claim that they are not liable under the indemnity agreement because of alleged misrepresentations by insurance agent Chase at the time they executed the agreement. They contend that prior to executing the agreement, Chase repeatedly assured them the indemnity agreement was effective for only one year. The parties do not dispute that the express language of the agreement requires defendants to indemnify St. Paul if it is found liable under the bond at any time. The defendants allege, however, that even St. Paul construed the 1982 agreement as effective for only one year because it sought to execute another indemnity agreement prior to refusing to extend the bond in 1985. The trial justice found that the indemnity agreement was clear and unambiguous and that the parol evidence rule precluded admitting evidence of a contemporaneous agreement that limited the indemnification to only one year.

The issue before us is whether the trial justice erroneously granted St. Paul's motion for summary judgment. When reviewing summary judgment on appeal, this court must apply the same standard as the trial court. *McPhillips v. Zayre Corp.*, 582 A.2d 747, 749 (R.I.1990). When ruling on the summary-judgment motion, the trial court must review the pleadings, affidavits, admissions, answers to interrogatories, depositions, and other appropriate portions of the record in the light most favorable to the nonmoving party. *Steinberg v. State*, 427 A.2d 338, 340 (R.I.1981); Super. R. Civ. P. 56(c). The nonmoving party has an affirmative duty to set forth specific facts in order to show that a genuine issue of material fact exists to be decided at trial. *Nichola v. John Hancock Mutual Life Insurance Co.*, 471 A.2d 945, 948 (R.I.1984).

The defendants offered two arguments purporting to absolve them from liability under the express terms of the indemnity agreement. They first contend that a contemporaneous oral agreement existed that the written indemnity agreement was effective for only one year. Second, defendants

assert that their subjective and reasonable expectations as to the duration of the agreement should prevail over inconsistent preprinted terms of a standardized agreement. We acknowledge that defendants generally would not be barred from challenging a contract because of fraud, even though they were negligent in signing the contract without reading it. *Continental Illustrating Co. v. Longley Motor Sales Co.*, 43 R.I. 552, 553, 113 A. 869, 869–70 (1921). However, even when the record in this case is viewed in the light most favorable to defendants, neither of these arguments supports defendants' position.

The parol evidence rule is a well-settled rule of substantive law. It provides that, "in the absence of fraud or mistake, parol or extrinsic evidence is not admissible to vary, alter or contradict a written agreement." *Supreme Woodworking Co. v. Zuckerberg*, 82 R.I. 247, 252, 107 A.2d 287, 290 (1954); *see also* Restatement (Second) *Contracts* §§ 213, 214 (1981). Chase's alleged oral representations that the indemnity agreement would be effective for only one year constitute extrinsic evidence contradicting the unambiguous terms of the written contract. Although the parol evidence rule would ordinarily bar such extrinsic evidence, defendants argue that the rule is inapplicable to Chase's alleged statements because the statements are evidence of fraud or misrepresentation affecting the contract's validity.

The trial justice's decision was based on the inadequacy of defendants' pleadings concerning the parol evidence rule, not on the rule's actual application. The party opposing summary judgment may not rest upon mere allegations or denials in the pleadings but rather must set forth specific facts showing that a genuine issue of material fact exists. *Steinberg*, 427 A.2d at 340 (citing *Ardente v. Horan*, 117 R.I. 254, 257–58, 366 A.2d 162, 164 (1976)). Nowhere in the pleadings and materials properly before the trial justice did defendants allege they were induced to execute the indemnity agreement by the alleged misrepresentations.[2] In

2. The general rule is that a misrepresentation should take the form of an expression of fact and not the offering of an opinion or estimate. *See*

*East Providence Loan Co. v. Ernest*, 103 R.I. 259, 263, 236 A.2d 639, 642 (1968); *Campanelli v. Vescera*, 75 R.I. 71, 73, 63 A.2d 722, 723 (1949).

his deposition Mr. Russo did not testify that he would not have signed the indemnity agreement if he knew it would be effective for more than one year. Instead, Mr. Russo stated, "I had no choice, because if I didn't receive that bond I'd be out of business then and there, at that moment." Thus the uncontradicted testimony before the trial justice was that Mr. Russo signed the indemnity agreement to stay in business, not because Chase's misrepresentations induced him to sign.

The trial justice properly entered summary judgment because defendants failed to properly assert that the alleged misrepresentation induced them to execute the indemnity agreement. Absent a sufficient pleading of reliance on the alleged misrepresentation, the parol evidence rule precludes evidence of a contemporaneous oral agreement to vary the terms of the written agreement.

██ Summary judgment in this case is not an inequitable result. For over thirty years defendants were principals of a corporation that had net sales exceeding $9 million in 1984. The defendants cannot claim to be unsophisticated business persons. Their asserted reliance on oral characterizations may have been unreasonable, as a matter of law, because they are sophisticated business persons and the characterizations contradicted the plain language of the indemnity contract. *See Rhode Island Hospital Trust National Bank v. Howard Communications Corp.*, 980 F.2d 823, 828 (1st Cir.1992). St. Paul has paid to the State of Rhode Island $114,019.60 on behalf of Russo Brothers Incorporated. Mr. Russo readily admitted that the corporation owed a minimum of $94,000 for tobacco taxes. A greater inequity would result to allow defendants to escape liability for debts

paid on their behalf and for which St. Paul secured a written indemnity contract. We have long recognized that the purpose of the parol evidence rule is to "enable parties to make their written contracts the only evidence of their undertakings and to protect themselves against the hazard of uncertain oral testimony in respect to their engagements." *Myron v. Union Railroad Co.*, 19 R.I. 125, 126, 32 A. 165 (1895). The present holding is consistent with this purpose.

██ The defendants' second argument for not being bound by the express written terms of the indemnity agreement is that the agreement is a "standardized" contract. The defendants cite to the Second Restatement for the proposition that a particular term does not become part of an agreement when the party drafting the standardized agreement has reason to believe the other party would not manifest assent if he or she knew the writing contained the particular term. Restatement (Second) *Contracts* § 211(3) (1981). The defendants' reliance on § 211(3) fails for the same reason defendants did not circumvent the parol evidence rule. Section 211(3) requires the showing that "the party manifesting such assent would not do so if he knew that the writing contained [the] particular term." As previously discussed, defendants did not present any facts to the trial justice that they would not have executed the agreement if they had known it would be effective for an indefinite period. The defendants also rely on this court's holding that construed the terms of an automobile-insurance contract against the insurance company because it drafted the contract. *Elliott Leases Cars, Inc. v. Quigley*, 118 R.I. 321, 373 A.2d 810 (1977). Our decision in that case concerned the interpretation of ambigu-

It is further fundamental that a plaintiff must present evidence that shows he or she was induced to act because of the reliance upon the alleged false representation. *East Providence Loan Co.*, 103 R.I. at 263, 236 A.2d at 642. In the instant case there is no evidence that the statement made dealt with anything other than the interpretation of an unambiguous agreement, and further there is no evidence that defendants acted in reliance upon the interpretation given by the insurance agent. The defendants' reasoning would render summary judgment inappropriate whenever a party makes a mere unsupported

allegation of fraud or misrepresentation, even absent any allegation of reliance on the misrepresentation. The alleged misrepresentations in the present case are further problematic because they relate to the duration of the agreement, which is a future event. "An assertion must relate to something that is a fact at the time the assertion is made in order to be a misrepresentation. Such facts include past events as well as present circumstances but do not include future events." Restatement (Second) *Contracts* § 159, comment c at 428 (1981).

ous or conflicting provisions in a standardized insurance contract and is distinguishable from the present case, which involves neither an insurance contract nor the existence of ambiguity.

We repeat, the defendants' burden when opposing the summary-judgment motion was to set forth specific facts showing the existence of a genuine issue of material fact. *Nichola*, 471 A.2d at 948. The defendants failed to meet this burden and remain liable under the clear terms of the indemnity agreement.

For these reasons the defendants' appeal is denied and dismissed, the judgment of the Superior Court is affirmed, and the papers of the case are remanded to the Superior Court.

MURRAY, Justice.

I respectfully dissent. I view this case as both a definitive textbook instance in which the parol-evidence rule does not apply and one in which summary judgment should not have been granted.

The parol-evidence rule states that " *'in the absence of fraud or mistake*, parol evidence of prior or contemporaneous agreements is generally inadmissible for the purpose of varying, altering or contradicting a written agreement.'" (Emphasis added.) *Inleasing Corp. v. Jessup*, 475 A.2d 989, 993 (R.I.1984). The language of the rule explicitly states that its myrmidonlike qualities do not apply where there is fraud, mistake, or misrepresentation. In fact, *Inleasing* states that "[i]t would be impossible to prove fraud or mistake if the only admissible contract is the final one; the fraud would not be apparent from the face of the instrument." *Id.*

"[I]t is in no case denied that oral testimony is admissible to prove fraud, illegality, accident or mistake. *This is so, even though the testimony contradicts the terms of a complete integration in writing*." (Emphasis added.) 3 A. Corbin, *Corbin on Contracts*, § 580 at 431 (1960).

"[P]roof of fraud, whether in the execution of the writing or in the inducement to make it, whether it consists in the making of a fraudulent promise or in a fraudulent representation of some fact other than intention, *should never be excluded by the* '*parol evidence rule.*'" *Id.* § 580 at 581 (1993 Supp.) (analyzing J. Sweet, *Promissory Fraud and the Parol Evidence Rule*, 49 Cal. L.Rev. 877 (1961)).

This court has held that a misrepresentation "occurs when there is a 'manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts.'" *Dudzik v. Leesona Corp.*, 473 A.2d 762, 766 (R.I.1984) (quoting *Halpert v. Rosenthal*, 107 R.I. 406, 413, 267 A.2d 730, 734 (1970)). This court has said that an "innocent misrepresentation of a material fact may be actionable if it induces reliance." *Dudzik*, 473 A.2d at 766. A material fact is one that "is likely to affect the conduct of a reasonable person with reference to a transaction with another person." *Id.* at 766–67.

The parol-evidence rule has no application in this instance. The testimony regarding the alleged misrepresentations of Chase should have been considered by the trial justice. My review of the appropriate materials before this court persuades me that there are genuine issues of fact concerning whether a misrepresentation was made and relied upon.

When deciding a motion for summary judgment, a trial justice must be reminded that it "'is a drastic remedy and should be cautiously applied.'" *Rustigian v. Celona*, 478 A.2d 187, 189 (R.I.1984). A trial justice should search for issues of fact but should not determine them. *Id.* The trial justice's examination of the pleadings, depositions, answers to interrogatories, admissions, and affidavits must determine if a genuine issue of material fact exists and, if not, whether the moving party is entitled to judgment as a matter of law. *Ludwig v. Kowal*, 419 A.2d 297, 301 (R.I.1980). "[A]ll favorable inferences which can be drawn from matters properly before the court accrue to the benefit of the party against whom the motion is made." *Warren Education Association v. Lapan*, 103 R.I. 163, 169, 235 A.2d 866, 870 (1967). The entire record must be scrutinized closely, and the materials under examination filed by the nonmoving party are "viewed indulgently by the court." *Id.* Summary judgment is proper when there are

no material facts in dispute. *Richard v. Blue Cross & Blue Shield,* 604 A.2d 1260, 1261 (R.I.1992). Our review in this instance must be taken in the light most favorable to the Russos. I believe that in undertaking this review, issues of material fact exist.

I share with the majority what my review of the appropriate materials disclosed. The Russos' answer to the complaint explicitly stated the affirmative defense of misrepresentation, alleging that "the defendants were misled by [St. Paul] and its agents as to the circumstances, terms and conditions of the indemnity arrangements in question." In an interrogatory St. Paul specifically asked the Russos to "state each and every fact upon which the defendant[s] rel[y]" upon in support of their allegation of misrepresentation. The Russos answered that Chase specifically informed them that St. Paul would not renew the bond _____ unless the Russos signed the indemnity agreement as individuals. Additionally the Russos also responded that Chase allegedly informed them that the personal-indemnity agreement would be in effect for only one year. These allegations were also contained in Mr. Russo's affidavit. The Russos' memorandum in opposition to St. Paul's motion for summary judgment specifically stated that the "Russos were *induced* into executing the [a]greement by [Chase's] false representations." (Emphasis added.) Unlike the majority, I am not persuaded that the Russos' position is based upon mere allegations.

In his deposition Mr. Russo testified that he "repeatedly" asked whether the personal-indemnity agreement covered one year only. It is my conclusion that repeatedly asking this important question would lead a reasonable person to believe that it was a factor relied upon in reaching a final decision. Inducement or reliance can be inferred from the record. In fact the motion justice noted that inference and then appeared to disregard it.

In dissent, I do not premise my position on the allegation of misrepresentation alone. St. Paul described the tax bond as "a continuing bond for an indefinite period, not to expire until cancelled." Except for increases in dollar-coverage amounts, the bond was extended without any changes from 1975 until 1982. The Russos assert that in 1982 Chase informed them that the bond would not be renewed unless they signed the indemnity agreement as individuals. They also allege that Chase represented that the personal-indemnity agreement would be in effect for one year only and would not be required in the following year if the financial condition of Russo Bros. improved. In his affidavit Mr. Russo asserted that financial statements for the fiscal years 1982 and 1983 were forwarded to St. Paul, and it renewed the bond in 1983 and 1984 without reference to the personal-indemnity agreement and without inquiry into the personal financial condition of the Russos. Furthermore Mr. Russo asserted that in 1985, after Russo Bros. experienced a poor financial year, St. Paul asked the Russos to sign another personal-indemnity agreement. Yet paragraph 6 of the St. Paul indemnity agreement provides that St. Paul may *extend,* alter, or modify the bond and the Russos as indemnitors would remain liable according to the conditions of the *extended,* altered, or modified bond. I am curious about why St. Paul would ask the Russos to sign another personal-indemnity agreement if the tax bond was for an indefinite period not to expire until canceled, and in fact had not been canceled or expired at the time of the request. In other words why ask for a new agreement when your position is that the old agreement is still in effect?

In Mr. Russo's affidavit he asserts that St. Paul had extended the bond in the two years previous to the 1985 request without requiring or requesting a new personal-indemnity agreement. In fact this case is before us as a direct consequence of the 1982 agreement because that is the only agreement in which the Russos assumed personal liability. It is my conviction that St. Paul's request for a new personal-indemnity agreement lends credence to the Russos' position that Chase represented that the personal-indemnity agreement would be in effect for a one-year term.

Of consequence in reaching my dissent is the case of *Nashua Trust Co. v. Weisman,* 122 N.H. 397, 445 A.2d 1101 (1982). In *Nashua* a bank brought suit on a guarantee

agreement and a promissory note. The defendants in *Nashua* alleged fraud in the inducement. *Id.* at 400, 445 A.2d at 1103. In reviewing a denial of a motion for summary judgment, the *Nashua* court specifically stated that fraud in the inducement was a valid defense and may be asserted "if the facts are available to support it." *Id.* The *Nashua* court explicitly stated that "[t]he parol evidence rule does not preclude the use of testimony to prove fraud or misrepresentation." *Id.* "Since these *defenses raise factual questions, the denial of summary judgment on the guarantee action was proper."* (Emphasis added.) *Id.* It is my view that the rationale of the *Nashua* court is persuasive in our review of the instant case.

The record before us yields conflicting evidence regarding the "players" involved in the meeting where the indemnity agreement was allegedly signed. During his deposition Mr. Russo testified that Chase had brought the indemnity agreement to Russo Bros. for its execution. Mr. Russo stated that Chase explained that the personal-indemnity agreement would be in effect only for one year. Mr. Russo testified that although Robert J. Lamendola (Lamendola) signed the agreement on behalf of St. Paul, Lamendola was not present at the meeting with Chase when the Russos executed the agreement. Mr. Russo further asserted that he had never met Lamendola.

During her deposition Mrs. Russo testified that only Chase and Mr. Russo were present when she was called into the meeting in order to sign the personal-indemnity agreement. She stated that she did not recall meeting with any other person from Chase's insurance agency. Mrs. Russo had met Chase approximately ten times on the occasions that Chase would come to Russo Bros. for general business insurance purposes. She stated that Mr. Russo, in Chase's presence, explained to her that Chase was at the business to have both her and her husband sign the agreement that would be in effect for only a one-year period.

During his deposition Chase testified that he might have spoken about the indemnity agreement in "general" terms. He *could not recall* if he told the Russos that the agree-

ment would be in effect for only one year but specifically denied stating that in the event that the financial condition of the business improved, the indemnity agreement would not be needed. Chase testified that his only involvement with the bond was his delivery of it to Russo Bros. and that Lamendola was responsible for the execution of the bonds.

In his deposition Lamendola testified that he secured the signatures of the Russos on the indemnity agreement. He specifically testified that both he and the Russos signed the agreement on June 30, 1982, during a meeting at Russo Bros. He stated that this was the first time that he had met with the Russos. Lamendola did not recall any "specifics" about his discussions regarding the indemnity agreement. He did admit, however, that he may have said that the personal-indemnity agreement might be released if the financial condition of Russo Bros. improved.

The discrepancies with regard to the parties present and the discrepancies surrounding the representations made at the meeting at which the personal-indemnity agreement was executed convince me that a material issue of fact exists. It is fair to conclude that the Russos would know what Chase looked like after having dealt with him for more than ten years. The state of the record poses the questions who was at the meeting and what representations were made?

The *Nashua* court stated that fraud in the inducement is a valid defense and may be asserted if the facts support the allegation. The instant case suggests that the reasonable inferences drawn from the record disclose issues of material fact concerning whether a misrepresentation was made. My dissent is premised upon three important factors. First, both the Russos allege that Chase, a man with whom they had dealt in excess of ten years, made the representation that the personal-indemnity agreement would be in effect for one year only. Second, St. Paul's request for a new personal-indemnity agreement supports the inference that a representation was made regarding the one-year term of the agreement. Finally, the conflicting deposition testimony regarding who was present at and the representations

made during the meeting to execute the agreement contribute to any inference of misrepresentation that may be drawn. These factors, taken in their totality, indicate that summary judgment is inappropriate in the instant case, and consequently I would reverse the granting of summary judgment.[3]

---

**3.** Is it not the charm and the genius of the law that an identical record can persuade appellate judges to render different conclusions? The very liberty of our citizenry is based on similar foundations. My review of the record convinces me that the Russos have asserted sufficient issues of material fact to defeat a summary judgment motion. Not only do I not believe that there is "no evidence" (*see* majority opinion at note 2) that the Russos relied upon Chase's misrepresentations regarding a *present fact* but the record I reviewed represented a tapestry of evidence sufficient to support the Russos' assertion of inducement. In fact, I would conclude that it is inescapable that the Russos were misled.