JOSEPH C. CHEETHAM *et al. vs.* AURORA FERREIRA.

JANUARY 29, 1948.

PRESENT: Flynn, C. J., Capotosto and Condon, JJ.

FLYNN, C. J. This is a bill in equity to set aside, on the ground of alleged fraud, a bill of sale of the respondent's rug manufacturing business and the promissory note and personal property mortgage given by complainants as part consideration therefor, and for other incidental relief. After a hearing in the superior court on bill, answer and evidence, a final decree was entered granting the prayers for relief. The cause is before us on the respondent's appeal from that decree.

According to the evidence, the complainants Joseph C. Cheetham and Walter P. Rivers, Jr. are brothers-in-law and neither of them had previous experience in the rug manufacturing business. On May 4, 1946 the following advertisement appeared in the Pawtucket Times: "Rug manufacturing business, Cross St., C. F., $3500; guaranteed $200 weekly profit; easy to learn. Pe. 7256." Complainant Cheetham telephoned that number, talked with "Joseph Sheen," so called, the broker or agent who had inserted the advertisement, and at his suggestion arranged to meet him at the respondent's place of business on the following Monday morning, May 6, 1946. Pursuant thereto both complainants met Sheen and the respondent and negotiated with her for the sale of the plant as a going business.

The complainants testified in substance and effect that the respondent at that meeting represented that she was then manufacturing and selling rugs of the type shown to

them and that she was making therefrom $200 weekly profit for herself; that the manufacturing cost of each 18 by 30 inch rug was 40 cents whereas she was selling such rug for 80 cents; and that she had a list of customers who purchased all the rugs of that kind that she could manufacture. When asked to show her books, she stated that she would turn them and a list of her customers over to complainants when they paid the purchase price. She explained that she would not show the books and list before that time because she had done so once previously and the prospective buyers had used the information to start their own business rather than to purchase hers.

The complainants, relying on the respondent's representations, then agreed to purchase the business for $3500, payable $500 in cash and the balance in a promissory note secured by a personal property mortgage on the plant equipment and stock. By arrangement the parties met at the office of the respondent's attorney on the following day to complete the sale. The respondent was then advised by her attorney not to sell unless she obtained a cash deposit of at least $1500, and the complainants agreed to this change in the terms.

They then paid $1500 in cash, executed the note and mortgage for $2000, and received from the respondent a bill of sale of the stock, equipment, good will of the business, and "List of customers of the business." At that meeting, in the presence of respondent's attorney, the complainants again asked to see her books and she explained that she did not have them with her, but that she would deliver them to the complainants on the following day. The respondent's attorney did not take the witness stand to deny this testimony. The respondent, however, never delivered to the complainants the books or a "List of customers of the business" as represented.

The complainants took over the business and found in less than two weeks of operation that the 18 by 30 inch rug referred to could not be manufactured at the cost of

40 cents each as respondent had represented; that the braiding machines, which had been exhibited in circumstances which indicated that all the required braid was being made by her, were not capable of making braid for all the rugs, thus requiring the purchase of some braid elsewhere; that no customer had called at the plant and none had purchased any of the rugs finished by complainants, although respondent stated that they would make regular visits; and that it was impossible, on the basis of the actual manufacturing cost and sale price of each rug as represented by her, to make a weekly profit of $200. They therefore attempted to return the business to her, and even offered to accept a refund of the purchase price less $500. But such return and offer were refused by the respondent.

In her testimony the respondent admitted that she had authorized Sheen to sell the business for her at $3500, but she testified that she did not know of the advertisement until after the sale had been completed; and that she never represented that she had made all of the braid and materials on the premises, or that she was actually making $200 weekly profit. She also denied that she had kept any books or that she had offered to show or deliver them or a "List of customers of the business" to the complainants, although the bill of sale expressly included such list. She explained that she had given them the name of a place where she had purchased yarn on one occasion and also the name and address of a customer who made regular visits to her shop and ·purchased all the rugs she could make. She admitted that at the time of the negotiations and sale she was not actually making $200 weekly profit from the manufacture of the rugs and that she never had made that much from such business. She denied the complainants' testimony that she had represented that the 18 by 30 inch rugs were being manufactured by her at a cost of 40 cents per rug and were being sold at 80 cents.

The trial justice found in substance that the respondent

was a shrewd and experienced businesswoman; that she had not repudiated the agent's representation in the advertisement concerning a weekly profit of $200; that she took advantage of it and also induced the complainants to part with their money on the strength of that and other misrepresentations which were knowingly made by her and relied upon by them to their disadvantage. He therefore granted the complainants' prayers for relief, including an order that respondent pay $280 expended by them as rental for the place after she had refused to take back the business.

The respondent first claims that the trial justice erred in admitting in evidence and in relying upon the agent Sheen's advertisement as binding upon the respondent. In view of our ultimate conclusion we may assume that this evidence, if admissible for certain purposes, was not sufficiently connected to be binding upon the respondent. There still remains, however, the decisive question whether there is evidence of other false representations of existing material facts made by the respondent in circumstances that would be sufficient to support the trial justice's conclusions and decision. The respondent argues that there is no such evidence. She claims that the alleged statements by her concerning a profit of $200 a week, if made, were merely her opinion or estimate of possible future profits that the complainants might make; that these amounted only to permissible "puffing" by a seller to a buyer; and that such representations could not be the basis of fraud.

Ordinarily, under the doctrine of *caveat emptor,* where the buyer has a fair opportunity of inspection or investigation, a seller's expression of mere matters of opinion or judgment, especially as to possible future profits, comes within the category of "dealers' talk" or "puffing." However, where the representation amounts to the positive assertion of an existing material fact, as distinguished from the expression of mere opinion or judgment, it transcends the limits of "puffing." If such a statement is not merely an opinion, belief, or estimate, but is a positive false state-

ment of an existing material fact by means whereof the buyer is induced to rely thereon and is deceived to his disadvantage, the seller may be held responsible for the fraudulent representation or deceit. See *Handly* v. *Waldron*, 18 R. I. 567; *Hunt* v. *Barker*, 22 R. I. 18.

In the instant case the argument of the respondent overlooks the fact that there is evidence, if believed, that she did not confine herself to an expression of mere opinion or estimate of what profits the complainants might make in the future. According to the complainants, she positively represented as an existing material fact that she was actually making a weekly profit of $200 for herself in that rug business as conducted by her; that the manufacturing cost of each 18 by 30 inch rug was 40 cents and the selling price thereof was 80 cents; and that such cost and selling price were material elements of the profit which she asserted she was making for herself at the time of the negotiations.

She further asserted that she had books and a list of customers, which inferentially and naturally would be expected to reflect the truth of her other representations, but she effectively prevented their inspection by complainants during the negotiations. This was accomplished by her representation that the books would be turned over to complainants when the sale price was paid, and by the further explanation that this was necessary for her protection because of the alleged misuse of the information gained therefrom by previous prospects to whom they had been shown.

The respondent finally represented, on the day when the transaction was completed, that the books and list of customers would be delivered to complainants on the next day, but this promise was never fulfilled. She admitted that she never had made and was not making $200 weekly profit for herself at the time of the negotiations and sale, and she testified that she had never represented that she had made such a profit.

■■ Upon this conflict of evidence the trial justice plainly did not believe the respondent's testimony and in effect passed unfavorably upon the credibility thereof. Upon such findings the assertions by the respondent amounted to more than a seller's "puffing" or mere estimate as to possible future profit. They constituted positive representations of existing material facts that were known by her to be false and were made for the purpose of inducing the complainants to purchase the business. Since such fraudulent misrepresentations were substantially relied upon by the inexperienced complainants to their disadvantage, we cannot say that the decision of the trial justice upon all the evidence was clearly wrong. Whether the complainants had an adequate remedy at law was not questioned at any time by the respondent and therefore is not before us. See *Setchell Auto Parts Inc.* v. *Artamian & Sutcliffe Inc.*, 50 R. I. 144.

■ The respondent also argues that evidence concerning certain "OPA regulations" was admitted erroneously. Conceding that such evidence as here presented by complainants was hearsay and inadmissible, we do not find that the decision or any material part of it was based thereon. In our opinion this may be treated as harmless error.

■■ The respondent further contends that the trial justice erroneously ordered her to make certain repayments of money expended by complainants for the rental of the store where the machinery and equipment were located. She contends that equity does not ordinarily decree mere money judgments. As a general rule this is correct. There are some exceptions, however, where equity has awarded money damages as incidental to the principal relief. However, in the circumstances here we do not think that the record is clear enough to require the award of money referred to in paragraph numbered 2 of the decree. Conceivably there might be other matters in connection with this part of the claim which were not litigated at all. The decree in that respect should be modified, and so far as

that issue is concerned the parties should be left without prejudice to their remedy at law.

Upon all the evidence, especially when considered in the light of the trial justice's finding as to the credibility of the witnesses, we are of the opinion that the decision and decree in other respects are not clearly wrong.

The respondent's appeal is sustained in part and denied in part; the decree appealed from is modified by striking out paragraph numbered 2 and is otherwise affirmed; and the cause is remanded to the superior court for further proceedings.

*William R. Goldberg,* for complainants.

*Crowe & Hetherington, Henry E. Crowe, Thomas Hetherington,* for respondent.