RALSTON DRY–WALL COMPANY, INC., Plaintiff, Appellant,

v.

UNITED STATES GYPSUM CO. and Robert J. Clark, Appellees.

No. 90–1707.

United States Court of Appeals, First Circuit.

Heard Dec. 5, 1990.

Decided Feb. 22, 1991.

Richard W. Petrocelli with whom Girard R. Visconti, Mark J. Hagopian, and Visconti & Petrocelli Ltd., Providence, R.I., were on brief, for plaintiff, appellant.

Alan M. Block with whom Robert D. Friedman and Green Friedman and Packer, Boston, Mass., were on brief, for appellees.

Before BREYER, Chief Judge, COFFIN, Senior Circuit Judge, and SELYA, Circuit Judge.

BREYER, Chief Judge.

Ralston Dry Wall, the appellant, entered a subcontractor's bid for outside wall installation work on a building project. Ralston won the bid, but it turned out that Ralston had calculated its price on the assumption that it could use appellee United States Gypsum's "Fly–By" wall system. That system failed to meet the project architect's specifications and Ralston had to install a more expensive system at its own expense. Ralston has sued Gypsum, and Robert Clark, a Gypsum employee, for the difference.

Ralston's suit rests primarily upon claims of negligent (or intentional) misrepresentation. Ralston says that Gypsum, after examining the architect's specifications, incorrectly assured Ralston that its "Fly–By" system would comply with the specifications, and that, in submitting its bid, Ralston justifiably relied on that assurance, very much to its detriment. The district court, however, granted Gypsum's motion for summary judgment against Ralston. 740 F.Supp. 926. Fed.R.Civ.P. 56. Ralston now appeals. After examining the record we, like the district court, conclude that Ralston has not presented "enough competent evidence for a jury to find" in its favor. *De Arteaga v. Pall Ultrafine Filtration Corp.*, 862 F.2d 940, 941 (1st Cir.1988).

I

*The Misrepresentation Claims*

■ On the basis of the record before us, we believe that a jury reasonably could find the following facts in Ralston's favor: 1) Ralston wished to bid on wall installation work on a building project. To obtain the work, it had to promise that it would meet the specifications set forth by the project's architect. The project architect's specifications and accompanying plans were ambiguous. The specifications called for a "truss" system of outside wall support, a system that the experts said distributes a wall's weight to nearby columns through, for example, diagonal supports that cross in the middle of the wall section and then, in effect,

hang the wall from a column, like a door hanging on a doorpost. The plans accompanying the specifications, however, seemed to permit a different and more ordinary system, whereby the wall's weight simply rests upon a beam underneath the wall, the weight of the twelfth floor wall, for example, resting upon the beam that divides the eleventh from the twelfth floor, perhaps with a vertical support running up from the beam into the wall to help keep it attached. Gypsum's "Fly–By" wall system was of the latter, beam-support, type.

2) Howard Johnson, Ralston's bid estimator, noticing the ambiguity, turned to Gypsum for advice. Gypsum's Richard Tierney, a highly reputed sales representative, and Johnson, met about two weeks after Ralston decided to prepare a bid. Tierney assured Johnson that Gypsum's "Fly–By" system would meet the specifications. Johnson relied upon this assurance in preparing Ralston's bid.

3) A Gypsum engineer, Robert Clark, spoke to one of the project architects before the Johnson/Tierney meeting and found out that Gypsum's system would *not* do. Clark was present at the Johnson/Tierney meeting and failed to speak up. Had Clark done so, or had he told Tierney what he had learned before the meeting, Tierney and Gypsum would (in Tierney's words) have "walked away from" the job, and Ralston would not have submitted a bid that assumed a "Fly–By" system would meet the specifications.

Taken in isolation, these facts might make out a misrepresentation claim. *See* Restatement (Second) of Torts §§ 537, 552 (1977). But, unfortunately for Ralston, the record contains undisputed evidence of more. First, Johnson (of Ralston), in a deposition taken in this case, explains that after he met with Tierney (of Gypsum), he prepared a bid, and he submitted the bid over the phone to the contractor's employee Ed Hatfield. Johnson adds that "call[ing] in" a bid over the phone is a "typical" way of submitting a bid. He clearly states that, when he spoke to Hatfield, he "qualified" the bid by explicitly stating that "our bid was based on U.S.G.'s Fly By system;" that "qualification" is an industry term that describes a practice of clarifying what a bid rests upon; that he wanted to clarify this matter "to make sure that there was no misunderstanding" because "of that business about the truss in the spec and seeking the opinion of Mr. Tierney;" that Hatfield responded with "a simple okay;" and that the very purpose of clarification was to avoid the kind of misunderstanding that arose here. In an earlier deposition, taken in another case (in which Ralston sued the architects), Johnson specified that he had relied upon Tierney in preparing the bid; that he told Hatfield "that the bid was predicated on a Fly By system" as a "point of clarification" to make sure "they understood how we were bidding;" and that it was his "understanding" that Hatfield "would write ... down" the clarification. The record convinces us that the district court could rely on this evidence (and it could properly refuse to consider an effort by Johnson apparently to backtrack submitted long after oral argument). And, this evidence would have to lead any reasonable juror to conclude that Johnson's wise "qualification" of the bid should have saved Ralston from any pecuniary loss.

How then did Ralston's loss occur? The record goes on to show that, after Johnson presented his bid orally, the parties signed a *written contract*. The written contract must have superseded the oral bid. And, (in Johnson's words), "I don't believe that clarification ever got into the contract." Johnson added that Mr. Crimaldi (of Ralston) signed the contract and that "it is normal custom and practice in the industry ... that when a bid is qualified, if that bid is accepted, that qualification gets written into the contract." The record tells us virtually nothing more about the writing, how it came into existence, or why it failed to include the qualification that Johnson had carefully made orally. Given this record, a jury would have to conclude that, *in failing to incorporate* Johnson's oral qualification, Ralston acted negligently, or, at least, was not *justified* in relying on

what had gone before. *See* Restatement (Second) of Torts §§ 537, 552 (1977) (to recover plaintiff must show "justifiable" reliance on the information).

Taking all these facts together, we believe a jury would have to conclude that Ralston's failure to incorporate Johnson's qualification into the written contract caused Ralston's loss; and the jury could not lawfully trace the cause of Ralston's loss back to Gypsum's representations. Of course, Gypsum's assurances were *necessary* to the creation of any contract at all. They were the "but for" cause of the later written contract, in the sense that without them, Ralston might have created some totally different kind of contract or might not have bid in the first place. But, the record supplies us with no reason to believe that Gypsum had anything significant to do with the written contract's failure to incorporate Johnson's qualification. As far as this subsequent error is concerned, this case resembles that of a patient whose doctor wrongly (and negligently) tells him to discontinue taking needed medicine, who *ignores* the advice thinking it might be improper, but then, on his own, forgets to take the medicine. In these circumstances, "when a second actor has become aware of a potential danger caused by the negligence of a first actor and the second actor acts negligently with regard to the dangerous condition," the first actor is not the proximate cause of the resulting injury. *Walsh v. Israel Couture Post, No. 2274 V.F.W.*, 542 A.2d 1094, 1096–97 (R.I.1988); *accord Casador v. First National Stores, Inc.*, 478 A.2d 191, 193 (R.I.1984), citing W. Prosser, *Handbook of the Law of Torts* § 42 at 248 (4th Ed.1971) (first actor is not the proximate cause of an injury if "the forces set in operation by the defendant have come to rest in a position of apparent safety, and some new force intervenes"). Alternatively, one might say in this case, that Ralston's intervening failure to incorporate the qualification was not a foreseeable consequence of Gypsum's statements. *Almeida v. North Providence*, 468 A.2d 915, 917 (R.I.1983) ("If ... the intervening cause was not reasonably foreseeable, the intervening or secondary act becomes the sole proximate cause of the plaintiff's injuries."); *Walsh*, 542 A.2d at 1096. Either way, Gypsum is not the proximate cause of Ralston's loss, and Ralston cannot recover for the torts of intentional or negligent misrepresentation.

## II

### *Other Claims*

■ Ralston also claims that the same actions violate express or implied warranties that Gypsum gave in connection with its sale of its "Fly–By" system to Ralston. To prevail, however, Ralston must show that Gypsum sold it goods, or, at least, that Ralston and Gypsum entered into a contract for a sale of the goods in the future. The record does not contain sufficient evidence of any such contract. There is no "writing." *See* Rhode Island Gen.Laws § 6A–2–210 (contract for the sale of goods worth more than $500 must be in writing). Moreover, there is no evidence of discussion of prices, quantities, time or place of delivery, nor is there even evidence that Ralston would in the future have bought the physical goods it needed from Gypsum directly, rather than through a supplier called RICOM, which sold Gypsum products. In our view, a jury could not find "conduct by both parties which recognizes the existence of such a contract," present or future, or any other evidence of agreement. *See* Rhode Island Gen.Laws § 6A–2–204.

The judgment of the district court is

*Affirmed.*